HOLLY INVESTMENT COMPANY, Appellant,

v.

LAND CLEARANCE FOR REDEVELOPMENT AUTHORITY OF KANSAS CITY, Missouri, Respondent.

No. WD 33691.

Missouri Court of Appeals, Western District.

Jan. 18, 1983.

Charles C. Shafer, Jr., Kansas City, for appellant.

Donna Stanford Skidmore, Kansas City, for respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

MANFORD, Judge.

This is an action seeking recovery of damages allegedly resulting from the negligent failure to secure an applicable policy of insurance. Judgment was entered upon and in accordance with the jury's verdict for respondent. The judgment is reversed and the cause remanded.

Two points are presented, which in summary charge that the trial court erred in (1) admitting certain evidence, to wit, an executed release, because the result of such admission placed "upon the jury the task of determining the meaning of the language used in the release", leaving the determination of a legal question to the jury, and (2) the submission of respondent's verdict-directing instruction.

Appellant, Holly Investment Company, was plaintiff at trial and will hereinafter be referred to as Holly. Respondent, Land Clearance for Redevelopment Authority of Kansas City, Missouri was defendant at trial and will hereinafter be referred to by the designation L.C.R.A. Holly is a corporation whose sole stockholder is one Mary Pratt. Holly is the owner and lessor of residential rental properties. It applied to the Department of Housing and Urban Development (H.U.D.) for what is referred to as a Section 312 rehabilitation loan. The purpose of the $81,700.00 loan was to renovate and rehabilitate three apartment units within what is referred to as the Columbus Park/Garfield Urban Renewal Area in Kansas City, Missouri. L.C.R.A. is the local public agency which, by agreement with H.U.D., administers the Section 312 loans and acts as escrow agent.

In the processing of such loans, L.C.R.A. follows guidelines established by H.U.D. As a prerequisite to loan approval, there must be, at the time of the loan closing, proof of fire and extended insurance coverage. At the time of the closing of the loan transacted between the parties herein, there was in existence an insurance "binder" for fire and extended coverage issued by Travelers Insurance Company. The inception date of this "binder" was May 8, 1972, the date of the loan closing. The binder was to be effective from 12:00 noon on May 8, 1972, to 30 days subsequent to that date. The binder was cancelled within 30 days of issuance.

At this point, the evidence becomes highly controverted. By its evidence, Holly contended that L.C.R.A. offered to obtain fire and extended insurance coverage. L.C.R.A., by its evidence, contended it only agreed to assist Holly obtain the coverage when Holly was unable to do so. L.C.R.A. further contended that Holly requested L.C.R.A. to assist Holly in obtaining insurance to replace the "binder". L.C.R.A. requested, as it had done with the "binder", one Earl Baker to secure insurance. Baker is a local insurance agent. Baker placed insurance with St. Paul Fire & Marine Insurance Company. The St. Paul policy was issued on or about May 22, 1972 upon the Holly apartment units. This policy, as was later

determined, provided only "builder's risk"[1] coverage and not full coverage on the property. A fire occurred in two of the three apartment units on June 8, 1972. St. Paul refused payment to Holly and suit was filed in the United States District Court—Western District of Missouri. Holly's action in the federal court alleged that the policy sued upon provided coverage for fire, lightning, vandalism, malicious mischief, and builder's risk. During the pendency of that proceeding, it was determined that the St. Paul policy provided only "builder's risk" coverage. Holly and St. Paul entered into a settlement. St. Paul made payment to Holly in the sum of $35,000 in exchange for a release by Holly, and dismissal of the action in federal court. Of the $35,000, the contractor who was performing the renovation received some $1,700 to recover on the loss of tools and equipment.

Holly then filed the present action, alleging that L.C.R.A. had negligently secured the wrong coverage from St. Paul and claimed damages in the amount of $47,827.28. This sum claimed by Holly against L.C.R.A. was the alleged loss of rentals, plus the difference in the loss to the property and the amount paid by St. Paul.

Under its petition, Holly contends that L.C.R.A. ordered the insurance from St. Paul on its own, and not at the request or authorization of Holly. Holly further contended that L.C.R.A. was negligent in the type and form of insurance it secured from St. Paul. L.C.R.A., in its pleadings and upon its evidence, disclaimed that it ever secured any insurance on the properties, but merely assisted Holly by contacting Baker when Holly claimed it could not or was unable to secure insurance coverage. Thus, the issue was clearly drawn. The questions being presented in the main included: Did L.C.R.A., on its own, secure the coverage from St. Paul? Conversely, did L.C.R.A. merely assist Holly by contacting Baker? In addition, if L.C.R.A. did secure the coverage from St. Paul, did it do so negligently?

Finally, did L.C.R.A. act as the agent of Holly in the securing of the coverage from St. Paul, thus binding Holly? At the close of all the evidence and at the close of Holly's case, L.C.R.A. submitted its motion for directed verdict. Both motions were properly overruled by the trial court and the cause was submitted to the jury.

In order to address Holly's charged errors on this appeal, it is necessary to digress to the point in the trial herein when, over Holly's objection, the court admitted the release executed by Holly to the favor of St. Paul as part of the settlement of the federal court proceedings. It is essential that pertinent portions of that release be set forth. Those portions read as follows:

"Release and Forever Discharge.

St. Paul Fire and Marine Insurance Company & St. Paul Mercury Company his, hers, its or their agents and servants, and all other persons, firms and corporations whomsoever, of and from any and all liability, actions, claims and demands whatsoever which the undersigned now has, or may hereafter have, on account of or arising out of personal injuries or damage to person or property or impairment of or damage to any right, including loss of services or society, and expenses or loss of any kind or character, or other damage or claim sustained by or accruing to the undersigned, under insurance Policy No. 180JA3836 issued to plaintiff and all causes of action plead in complaint 20526–4 filed in the United States District Court for the Western District of Missouri."

Holly contends that the court erred when, over Holly's objection, the foregoing portion of the release was read to the jury and the release was admitted into evidence. Holly argues that since the terms of the release are explicit and unambiguous, the intention of the parties thereto should be gathered from the release. This being the situation, it was the duty and responsibility of the trial court and not the jury to declare the

1. "Builder's risk" was from the evidence herein, established as insurance coverage for only specific items or property construed as improvements to the property within the course and period of construction or improvement.

meaning of the release. Obviously, L.C. R.A. argues to the contrary, urging that since the release, by its terms, was ambiguous, this posed, relative to the intention of the parties, a fact situation which was properly left for the jury's determination. L.C. R.A. further contends that it is a party in contemplation as a releasee under the terms of the release. As noted above, the release contains the phrase "and all other persons, firms and corporations whomsoever." L.C. R.A. argues that it is released from all liability, if any, to Holly by the terms of said release or at least, the jury, upon introduction of the release into evidence, held the prerogative to decide the question.

▆▆▆ Thus, the question to be answered is whether the meaning of the release should have been submitted to the jury. In answering that question, it is pointed out that the trial court's obligation is to consider that question in light of the general rules of release construction, including the rule that "any language general in form, when used in connection with [a] specific matter, will be presumed to have been used in subordination to it, and will be construed and limited accordingly." *Williams v. Riley,* 243 S.W.2d 122 (Mo.App.1951), citing *Grumley v. Webb,* 44 Mo. 444 (1869). Applying that rule here, although general language ("all other persons, firms and corporations whatsoever") is used, the "specific matter" to which it refers is liability under the policy itself. No other matters are covered or mentioned in the release and, therefore, none can be said to have been in the contemplation of Holly and St. Paul Fire and Marine at the time the release was signed. Certainly, an action for the negligent securing of insurance coverage cannot be said to be "under the policy". The release is, therefore, irrelevant to this cause of action and the question of its meaning should not have been submitted to the jury. *State ex rel. Stultz v. Campbell,* 602 S.W.2d 874 (Mo.App.1980). *See also State ex rel. Normandy Orthopedics v. Crandall,* 581 S.W.2d 829, 833 (Mo. banc 1979).

There is nothing upon this record to support the position of L.C.R.A. L.C.R.A. was never a party to the action in the federal court. The release, by its very terms and upon the face thereof, is limited to the release of St. Paul regarding the claim by Holly under the terms of the policy of St. Paul. There is nothing upon this record to reveal that anything but the release of St. Paul, upon its "builder's risk" policy, for the amount of that policy only, and the dismissal of the federal court action, was ever contemplated as between Holly and St. Paul.

It was reversible error for the trial court to have admitted the release. The trial court should have ruled, as a matter of law, that the release was not admissible because it was irrelevant to the issues herein. The trial court further erred in not refusing the release as evidence and in its failure to rule that L.C.R.A. was not a party released therein.

Point (1) is sustained to the favor of Holly.

▆▆ There is no need to set forth a lengthy dissertation relative to Holly's point (2), which challenges the submission of the verdict director instruction of L.C.R.A. With the disposition made under point (1) above, it suffices to state that since the challenged instruction was based exclusively upon the admittance of the release, and that action has been found to be in error, the submission of the instruction was also erroneous.

Point (2) is sustained to the favor of Holly.

▆▆ As a closing note, it needs to be mentioned that the contention of L.C.R.A. that Holly failed to plead and prove a submissible case is without merit. From the record, it is shown that Holly did make, under the evidence, a prima facie case which would withstand a motion for directed verdict. The trial court was faced with deciding that precise question twice and properly overruled such motions.

For the reasons set forth herein, the judgment is reversed and this cause is remanded.

All concur.