Shawn YOUNG, A Minor,
Plaintiff-Appellant,

v.

RAY AMERICA, INC.,
Defendant-Respondent,

and

St. Paul Fire and Marine Insurance Co.,
Garnishee-Respondent.

No. WD 34412.

Missouri Court of Appeals,
Western District.

May 22, 1984.

· Gary W. Collins, Kansas City, for plaintiff-appellant.

Robert M. Hill, Richmond, for defendant-respondent.

Dean F. Arnold, Kansas City, for garnishee-respondent.

Before SOMERVILLE, P.J., and NUGENT, and LOWENSTEIN, JJ.

NUGENT, Judge.

Plaintiff, Shawn Young, recovered a $45,000 judgment against defendant, Ray America, Inc., for injuries sustained while playing at a house being built by defendant. St. Paul Fire and Marine Insurance Company (hereinafter St. Paul) was summoned as garnishee and denied issuance of any policy insuring Ray America, Inc. Plaintiff contended in his reply that the policy issued by garnishee naming Dennis and Marjorie Klatt, d/b/a Klatt R.E., Inc., as named insured, also insured Ray America, Inc. The court heard the case without a jury, discharged the garnishee, and plaintiff appeals.

Pursuant to Rule 90.13(e) and § 525.190,[1] the issue or issues to be tried in a garnishment proceeding are *only* those raised in the denial (the exceptions) and the reply (the response). In this proceeding, the only issue raised by plaintiff's denial and garnishee's reply was whether or not the policy issued by garnishee St. Paul, insured Ray America, Inc., the defendant in the underlying action. Where, however, issues not raised in the pleadings are nonetheless tried without objection, they are treated as though they had been raised by the pleadings. *Travelers Indemnity Co. v. Beaty*, 523 S.W.2d 534, 537 (Mo.App.1975); Rule 55.33(b). Thus, we review the evidence adduced at the hearing concerning plaintiff's recovery based on a prior oral

---

1. All sectional references are to the Revised Statutes of Missouri, 1978, and all Rules are to the Missouri Supreme Court Rules, unless otherwise indicated.

agreement as well as recovery based on the written contract.

On October 7, 1975, plaintiff was hurt while playing on the foundation of a house being built in a real estate development known as Green Vale Addition. The property was owned by Ray America, Inc., which is a Missouri corporation whose only owners, directors and officers are Dennis and Marjorie Klatt. Plaintiff filed suit, however, only against Ray America, Inc. Plaintiff recovered a $45,000 judgment against Ray America, Inc., and attempted to recover said judgment amount by summoning St. Paul as garnishee.

At the garnishment proceeding, Mrs. Klatt's testimony revealed the following: Dennis and Marjorie Klatt, have been involved in the real estate business since 1968. From 1968 to 1973, the Klatt's real estate business was known as Dennis Klatt Real Estate. In 1972, the Klatts incorporated Dennis Klatt Real Estate and it became Dennis Klatt Real Estate, Inc. The primary purpose of this corporation was the selling of real estate for others. Dennis Klatt Real Estate, Inc., owned no property; it only leased office quarters. Also in 1972, the Klatts incorporated defendant Ray America, Inc. The primary purpose of Ray America was to hold property which was going to be sold or developed. The Klatts also owned fifty percent of Potmar, Limited, a small corporation they formed together with a friend to buy and sell real estate. The Klatts carried most of their liability insurance with Cameron Mutual Insurance Company until the summer of 1974, when Cameron Mutual informed the Klatts that it did not want to "be on the risk for the corporations, or for as large of a development operation as we [the Klatts] had hoped it would be."

Thereafter, Charles Allen, an insurance sales employee of the Morrison Realty—Insurance Agency of Cameron, Missouri, came to the Klatt's office and "made an appointment to come back within a week or two to take an application." At that meeting, Mr. and Mrs. Klatt discussed their insurance needs with Mr. Allen. Mrs.

Klatt testified that the purpose of the meeting was "[t]o make sure that every piece of property that we'd be involved with was covered with the kind of insurance that we wanted." Mrs. Klatt told Mr. Allen that the Klatts were changing insurance companies "[b]ecause of the corporations and development." Mrs. Klatt gave Mr. Allen descriptions of the Klatt's property and also told Mr. Allen that some of the property was owned by Ray America, Inc., and some was owned by the Klatts individually. She also told Mr. Allen that houses were being built in the development owned by Ray America and showed him the Klatts' various companies' ledgers and journals. With the help of ledgers, plat books and wall maps, she gave Mr. Allen the legal descriptions of the properties sought to be insured. Mr. Allen took notes during the meeting, but he gave the Klatts no application, nor did the Klatts sign anything. Mrs. Klatt had the "understanding that insurance coverage was in effect" when Mr. Allen left.

After this meeting, the Morrison Agency prepared and submitted an application for insurance to St. Paul. The August 9, 1974, application is signed by Jerry Baker, owner of the Morrison Agency, but neither of the Klatts signed it, filled out any part of it or received a copy of it. The application lists the name of the applicant as "Dennis and Margaret Klatt DBA Klatt Realty." Various properties owned or leased by the Klatts or their corporations are listed under the "Description of Hazards" portion of the application. No indication of ownership of the various properties appears in the application. Five questions follow the property listings. The first question is, "Does applicant contemplate any structural alterations, new construction or demolition?" Neither this question nor any of the other four has a check in the provided "yes" or "no" boxes.

Garnishee, St. Paul, issued its policy and mailed it to the Klatts. It named the insured as "Dennis and Margaret Klatt DBA Klatt Realty." The declaration page of the policy was completed to show "The Named

Insured is [X] Individual." The property on which the plaintiff was hurt is included in the policy schedule under the description "40 acres at Sec. 10, TWP 52, R. 29." The policy includes a form captioned "OWNERS LANDLORDS AND TENANTS LIABILITY COVERAGE FORM—COVERAGE FOR DESIGNATED PREMISES AND RELATED OPERATIONS IN PROGRESS OTHER THAN STRUCTURAL ALTERATIONS, NEW CONSTRUCTION AND DEMOLITION." After receiving and reading the policy, the Klatts asked that the named insured be changed to read "Dennis and Marjorie Klatt DBA Klatt Real Estate, Inc." No other changes were requested or made. This policy remained in force for the period of August 8, 1974, to August 8, 1975. A substantially identical policy was issued for the ensuing year and was in force when plaintiff was injured.

Jeff Crump, a St. Paul employee, was the only other person to testify. He testified that the Morrison Agency was a general agent of St. Paul. Their agency agreement includes the following provision:

> Agent has full power and authority to receive and accept proposals for insurance covering such classes of risks as the Company may from time to time authorize to be insured and by such receipt and acceptance bind said Insurance Company upon the respective risk, subject to underwriting rules and requirements of the Company as may be stated from time to time.

Prior to the garnishment proceeding, the parties stipulated, among other things, that the plaintiff was injured on a portion of the land described in the policy and that plaintiff's accident was the type of occurrence covered by the policy. The parties further stipulated that the only issue in dispute was "whether or not the policy insures the individual and/or corporation liable for said accident."

Neither party requested findings of facts, but the trial judge asked the attorneys to supply the court with proposed findings of fact. The record does not indicate whether anyone complied with the court's request.

The court entered judgment in favor of the garnishee and found the following facts:

1. Garnishee issued OCT policy 580–JE–5999 covering Dennis and Marjorie Klatt.
2. Said policy was in full force and effect on the date that plaintiff fell.
3. The contract declared Klatts' business to be "Klatt Realty Company" but did not declare that the Klatts were engaged in real estate development activities.
4. The premium that the Klatts paid on the policy for a coverage of agricultural land was $0.064 per acre.
5. Had the land been classified as housing development the Klatts would have had to pay $4.32 per acre.
6. Ray America, Inc. was not named on said policy.
7. Mr and Mrs Klatt had no insurable interest in the property in question.

■ Those findings relate only to plaintiff's theory of recovery based on the insurance policy. The court apparently made no findings with respect to plaintiff's theory of recovery based on the prior oral agreement. In *Graves v. Stewart*, 642 S.W.2d 649 (Mo.1982) (en banc), the court announced the rule that findings of fact and conclusions of law by the trial court in a jury-waived case provide a proper basis for assignment of error even when the parties made no request for them. Where the trial court makes no findings of fact with respect to a particular issue, however, the court of appeals will resolve all fact issues in accordance with the court's judgment and will affirm it if it can be supported on any theory of law in accordance with the evidence. Rule 73.01(a)(2).

■ In his first point on appeal, plaintiff contends that the general agent bound St. Paul to an oral contract of insurance because the oral negotiations between agent and the Klatts established a binding oral contract that provided coverage for Ray America, Inc. That is not so because even

if we assume that the agent had the authority to bind St. Paul and assume that an oral contract providing insurance coverage for Ray America was entered into when Charles Allen and the Klatts conducted their second meeting, that oral contract was superseded and merged into the written insurance policy at such time as the written policy was issued by St. Paul and accepted by the Klatts. A fundamental rule is that any verbal negotiations between contracting parties are merged into written insurance policies issued by the insurer and accepted by the insured. *Hartford Accident and Indemnity Co. v. Farmington Auction, Inc.*, 356 S.W.2d 512, 518–19 (Mo.App.1962); *Wright v. Great Eastern Casualty Co.*, 206 S.W. 428 (Mo.App.1918).

■ Plaintiff asserts, however, that whenever material variance exists between a prior oral agreement and a later written agreement, the written agreement should not be deemed to supersede the oral agreement. He contends that the oral agreement was not merged into the subsequent written policy because of the material variance between the insureds as named in the oral contract and the policy as executed. Plaintiff relies on *Baker v. St. Paul Fire & Marine Insurance Co.*, 427 S.W.2d 281 (Mo.App.1968). In that case, the insured on January 28, 1965, applied for medical insurance, paid the premium, and was told by the agent that the coverage was "effective this minute." On February 19, 1965, *before* the insured had received the insurance policy, he was injured and incurred medical expense. While the insured was flat on his back as a result of the injury, the policy was delivered to him. The policy was dated February 26, 1965, after plaintiff was injured. The court held that the oral contract was not merged into the written contract and that plaintiff could recover under the oral contract.

Part of the basis for the court's holding was indeed the fact that the court found material variance existed between the terms of the oral contract and the written policy. The other basis of the court's hold-

ing, however, was that the insured had not assented to the written policy tendered. Immediately upon receipt of the written policy, the insured expressed his dissatisfaction with the effective date of the policy.

In the case at bar, the injury occurred more than a year after the policy had been issued. While material variance may indeed have existed between the alleged oral contract of insurance and the written policy regarding the named insured, the evidence in this case shows that the Klatts accepted the policy as written. The initial insurance policy delivered to the Klatts named the insured as "Dennis and Margaret Klatt DBA Klatt Realty." After reading the policy, Mrs. Klatt requested that the named insured be changed to read "Dennis and Marjorie Klatt DBA Klatt Real Estate, Inc." St. Paul changed the named insured in accordance with Mrs. Klatt's request. The policy remained in force until it expired on August 8, 1975. An identical policy was then issued for the ensuing year. After the name of the insured was changed, the Klatts made no other requests or complaints regarding the insurance policy until the company refused to pay on plaintiff's claim. Unlike the insureds in the *Baker* case, the insureds in this case accepted the written policy of insurance which named the insured only as "Dennis and Marjorie Klatt DBA Klatt Real Estate, Inc."

Under such circumstances, we hold that even if a material variance exists between the oral agreement and the written policy concerning the named insureds, the prior oral agreement must be deemed merged into and superseded by the later written insurance policy where the policy has been delivered to the insureds, read by them, altered in accordance with their requests regarding the proper names of the insureds, and retained by the insureds until the policy's expiration and then renewed for an additional year without further changes.

Plaintiff next asserts that the knowledge of the agent, Mr. Charles Allen, is to be imputed to St. Paul and that St. Paul is estopped from asserting as a defense its

agent's misrepresentations to them. Plaintiff contends that where innocent applicants (the Klatts) tell the agent the truth about a material matter (the identity of the owners or uses of the properties to be insured), and the agent misrepresents the applicants' interest by incorrectly filling out the application without the knowledge or consent of the applicants, the knowledge of the insurer's agent is to be imputed to the insurer. *Macalco, Inc. v. Gulf Insurance Co.*, 550 S.W.2d 883 (Mo.App.1977). Moreover, plaintiff contends that where the knowledge of the agent relates to a material misrepresentation which would otherwise render the policy unenforceable, the insurer may be estopped from asserting the agent's misrepresentation as a defense. *First National Bank v. Farmers New World Life Insurance Co.*, 455 S.W.2d 517 (Mo.App.1970).

■ Although the law will not permit an *insurer* to avoid the *policy coverage* by asserting that its agent (without the collusion of the insured) misstated, misrepresented or concealed a fact which was material to the risk, *American Fire and Indemnity Co. v. Lancaster*, 286 F.Supp. 1011, 1014 (E.D.Mo.1968), *aff'd*, 415 F.2d 1145 (8th Cir.1969); *Doran v. John Hancock Mutual Life Insurance Co.*, 116 S.W.2d 172 (Mo. App.1938); *Macalco, Inc. v. Gulf Insurance Co., supra*, at 894–95; the law will not require an insurer to provide coverage where none existed under the policy's own terms. *Taylor v. Commercial Union Insurance Co.*, 614 F.2d 160 (8th Cir.1980); *Maryland Casualty Co. v. Fidelity & Casualty Co.*, 313 F.Supp. 560 (W.D.Mo.1970); *Allstate Insurance Co. v. Northwestern National Insurance Co.*, 581 S.W.2d 596 (Mo.App.1979); *Martinelli v. Security Insurance Co.*, 490 S.W.2d 427 (Mo.App. 1972); *Weber v. Union Life Insurance Co.*, 394 S.W.2d 565 (Mo.App.1965).

■ The case plaintiff relies on, *Macalco, Inc. v. Gulf Insurance Co., supra*, illustrates the rule that an insurer is precluded from asserting a ground of forfeiture resulting from the mistake of its agent. In that case, the insurer denied liability on an aircraft hull and liability policy because the policy excluded student pilots from coverage. The pilot who flew the plane when it crashed was specified in the pilot clause but did not hold proper certificates or ratings. The insurance company's agent had represented that the pilot had been certified as a private pilot when in fact he held only a student pilot certificate. The court found that the agent alone was responsible for the misrepresentations and that the insurer could not avoid the *policy* coverage because of the misrepresentation contained in the application. In *Macalco*, therefore, the court required the insurer to provide the coverage afforded by the policy. The court did *not* require the insurer to provide coverage which was never included under the terms of the policy. Plaintiff in this case is asking this court to create coverage where none existed in the first place. "[T]he doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability." *Maryland Casualty Co. v. Fidelity and Casualty Co., supra*, at 564. To require the insurance company to provide coverage for an entity other than the named insured would have the effect of providing coverage where none existed under the policy's own terms. *See Taylor v. Commercial Union Insurance Co.*, 614 F.2d 160, 163 (1980).

■ Ray America, Inc., suffered the judgment in the case below. The named insured did not. The insurance policy does not cover losses suffered by Ray America, even though Mr. and Mrs. Klatt are the sole shareholders, officers and directors of that corporation. The policy itself provides no basis for extending coverage to Ray America, Inc. *See Taylor v. Commercial Union Insurance Co., supra*, at 163. Nor does the purported oral contract of insurance provide any basis for coverage because the oral agreement was merged into and superseded by the written contract of insurance, as we have already held.

Plaintiff next asserts that the policy should be construed to include Ray America as a named insured because the policy's

named insured, "Dennis and Marjorie Klatt, DBA Klatt Real Estate, Inc.," is uncertain and ambiguous. Plaintiff relies on *Boling v. State Farm Mutual Automobile Insurance Co.*, 466 S.W.2d 696 (Mo. 1971), where the court found that an insurance policy naming the president of a corporation doing business as the corporation was ambiguous. Because of the insurance agent's mistake, the name of the applicant for an automobile liability policy was listed as "Hunt, Paul d/b/a Hunt Materials, Inc." The policy also named the insured in that manner. The premiums on the policy were paid by checks drawn on the corporation's account and signed by Paul Hunt. The court held that fact to estop the insurer from denying that the corporation, rather than its president individually, was the insured. The court would not permit the insurer to avoid liability for injuries Mr. Hunt suffered, on the theory that he was the named insured and came within a provision excluding coverage of bodily injury to the named insured.

▉▉▉▉ Because of the ambiguity on the face of the policy, the court construed the policy against the insurer and found that the *named* corporation was indeed an insured. We agree with plaintiff that the named insured "Dennis and Marjorie Klatt DBA Klatt Real Estate, Inc.," is ambiguous and uncertain. The policy may be construed as providing coverage to the Klatts individually, to Dennis Klatt Real Estate, Inc., or to both the Klatts individually and Dennis Klatt Real Estate, Inc. *See Boling, supra*, at 698. A construction of the language against the insurer would provide coverage for any of the above-named insureds, but no permissible construction of that language, would provide coverage for Ray America. To construe the ambiguity in the policy to include Ray America as a named insured would amount to the rewriting of the contract to provide coverage for which the parties never contracted. In construing insurance contracts, courts "may never rewrite them so as to provide coverage for which the parties never contracted." *Universal Towing Co. v. Hartford Fire Insurance Co.*, 421 F.2d 379, 381 (8th Cir.1970). Therefore, we will not construe the policy to include Ray America, Inc., as a named insured.

Plaintiff's reliance on the fact that Mrs. Klatt testified that she *usually* paid one-third of the insurance premiums with Ray America, Inc., checks is inconclusive and does not change our finding that the language of the policy cannot be construed to include Ray America as a named insured. No such checks were offered in evidence. The trial court was free to believe or disbelieve Mrs. Klatt's testimony. Ray America's name does not appear in the policy at all as did the corporation's name in *Boling v. State Farm Mutual Insurance Co., supra.* Thus, that case is distinguishable and no authority for holding the insurer in this case to be estopped to deny coverage of Ray America.

▉▉▉ In plaintiff's fourth point on appeal, he asserts that the written policy should be reformed to reflect the true agreement of the parties by adding Ray America as a named insured. Plaintiff contends that the mutual mistake of the agent and the Klatts as to "who[m] the policy protected, the legal effect of the wording of the contract," provides the basis for reformation. Defendant contends that plaintiff cannot recover on a reformation theory because he did not request reformation of the policy in the trial court and because the evidence does not sustain a claim for reformation.

Although reformation was neither mentioned nor suggested by the denial or reply, the parties proceeded through trial as if the theory of reformation had been raised and properly pleaded. Defendant never objected to plaintiff's evidence regarding the existence of an oral agreement and the difference between the written and oral contract. Accordingly, we treat the issues tried without objection as though they had been raised by the pleadings. *See Galemore v. Haley*, 471 S.W.2d 518, 520 (Mo.App.1971).

We agree with defendant, however, that the evidence does not sustain plaintiff's claim for reformation. In *Erickson Re-*

*frigerated Transport, Inc. v. Canal Insurance Co.,* 474 S.W.2d 337, 340 (Mo.App. 1971), a case which plaintiff cites, the court said:

> Though the rationale of the cases is not uniform, it is generally true that when an applicant for insurance correctly states his interest in the property to be insured and distinctly asks for insurance thereon, and the agent of the insurer agrees to comply with his request and assumes to decide on the form of the policy to be written for that purpose, but by mistake of law adopts a form which does not cover such an interest, equity will reform the policy so as to make it cover that interest. *Horine v. Royal Insurance Co.,* 199 Mo.App. 107, 114–115, 201 S.W. 958, 960–961 . . . .

In both the *Erickson* and *Horine* cases, the courts allowed reformation of the insurance policies where the evidence indicated that the insureds believed that the policy as written conformed to their oral agreement because of their reliance on the agent.

In *Horine,* the plaintiff alleged that when a fire insurance policy was delivered to her, she informed the insurance company's agent of the fact that the policy named her husband as the insured, whereas the title to the property was in her name. The agent mistakenly told her that it made no difference whether title was in her name or in her husband's and that if any loss occurred it would be promptly paid. Believing it to be true, plaintiff relied on that statement, and made no further effort to change the named insured. The court allowed reformation because of the mutual mistake of the parties about the legal effect of writing the husband's name rather than the wife's in the policy. The plaintiff's evidence clearly showed that, "on calling the agent's attention to this fact, she was assured that the effect of the policy as it stood was to insure her property which was in her name." *Id.* at 960.

In the case at bar, Mrs. Klatt never testified that she believed the written policy covered Ray America, Inc. Upon receipt of the policy, Mrs. Klatt did not ask the agent whether Ray America was covered. Instead, Mrs. Klatt read the policy and asked that it be corrected to name the insureds as "Dennis and Marjorie Klatt DBA Klatt Real Estate, Inc." rather than "Dennis and Margaret Klatt, DBA Klatt Real Estate." Neither the original policy nor the policy as corrected at Mrs. Klatt's request, affords coverage to Ray America. Under such facts, plaintiff cannot invoke the equitable remedy of reformation. *Galemore v. Haley, supra.*

The *Galemore* case is controlling here. In that case, the plaintiff asserted that the insurance agent and the insureds orally agreed to a coverage period which differed from the period stated in the policy, and that " 'there should be a reformation of the policy contract' in that respect." *Id.* at 520. The court declined reformation because the Haleys had accepted the policy as issued. The court wrote at 525:

> The issued policy, plainly affording the stated coverages for a six-month policy period from February 27 to August 27, 1965, was countersigned by agent Bruce DeField on April 6, 1965, mailed to the Haleys, and admittedly received by Mrs. Haley who 'didn't look at the dates' but 'put it in the car and that is where it stayed.' Insofar as the transcript shows, no complaint about the stated policy period was voiced or indicated prior to plaintiffs' institution of the instant action on May 21, 1968. In these circumstances the Haleys are deemed to have accepted the policy as issued and neither they nor plaintiffs should now be heard to impugn its integrity.

A fortiori, where the insureds *read* the policy, requested a correction as to the named insureds, and renewed the policy as corrected, the insureds must be deemed to have accepted the policy as written and should not now be heard to impugn its integrity, particularly with regard to the named insureds.

■ In his fifth point on appeal, plaintiff asserts that the trial court erred in its finding of fact No. 3 that "the contract did not declare that the Klatts were engaged in

real estate development activities," and in its finding of fact No. 4 and No. 5, dealing with premium charges. Plaintiff argues that the undisputed testimony established that the agent knew or should have known of the development activities of Ray America and that this knowledge of the general agent is to be imputed to the insurance company. *Macalco, Inc. v. Gulf Insurance Co., supra.* Even if we assume that the evidence established as a matter of law that the agent knew of the development activities of Ray America and impute that knowledge to the insurer, only the named insureds would benefit from the imputation. Imputing to the insurer the agent's knowledge that Ray America engaged in development activities would have no effect on entities not covered by the policy. Ray America would still not be a named insured and would thus not be covered by the policy.

Plaintiff's next assertion of error fails for the same reason. He claims that the discrepancy between what the Klatts actually paid for their coverage ($0.064 per acre) and what they would have paid had the land been classified as housing development ($4.32 per acre) was the fault of the agent and that the insurer should not be allowed to void "the policy of the insureds." The policy of the *insureds* is not being voided. The fact remains that Ray America is *not* an insured.

Plaintiff's last point on appeal is that the trial court erred in finding that the Klatts had no insurable interest in the property in question. That is not a ground for reversal of the judgment. Again, the issue is whether Ray America is insured. Judgment was not rendered against Mr. and Mrs. Klatt. The finding that they lacked an insurable interest in the property is irrelevant to the determination that Ray America was not covered by liability insurance issued by the garnishee.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.