COMMUNITY TITLE COMPANY, et al., Plaintiffs–Appellants,

v.

SAFECO INSURANCE COMPANY OF AMERICA, et al., Defendants–Respondents.

No. 56060.

Missouri Court of Appeals, Eastern District, Division Four.

July 10, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 22, 1990.

Application to Transfer Denied Oct. 16, 1990.

James William Herron, Joseph J. Trad, St. Louis, for plaintiffs-appellants.

Joseph L. Leritz, Sharon Wilkes, Don R. Sherman, St. Louis, for defendants-respondents.

STEPHAN, Judge.

Community Title Company and James P. Davis appeal from two orders granting summary judgment for respondents Safeco Insurance Company of America ("Safeco"), General Insurance Company of America ("General"), First National Insurance Company of America ("First National"), and Robert Feuerbacher, an insurance broker. Appellants had initiated this action as a result of the refusal by Safeco, General, and First National ("insurers") to pay appellants' claim for losses caused by a fire which destroyed a building in Kansas City, Missouri, owned by James P. Davis on which Community Title held a mortgage. We affirm in part and reverse and remand in part.

The parties do not dispute certain facts. Additional facts are related elsewhere as necessary. Appellants bought the Kansas City property on February 19, 1981. On the land appellants purchased were situated two buildings known as the National Fidelity Life Buildings, one on 1002 Walnut; the other, at 1004–1006 Walnut. Appellants contacted respondent Feuerbacher to obtain insurance on the property. Feuerbacher was authorized by Safeco to sell fire and casualty insurance in its behalf. The policy appellants actually received varied from the coverage they had initially sought. The insurance application dated January 31, 1981, listed the two distinct parcels of property as a single location. The initial insurance binder issued by Feuerbacher on February 1, 1981, reflected all risk coverage in the amount of $800,-000.00 only on the property located at 1002 Walnut. Two insurance policies were subsequently issued. Policy CP8802023, issued May 8, 1981, with a policy period from March 23, 1981, to March 23, 1982, provided for property and liability coverage on property listed as 1000–1002 Walnut, Kansas City. The property coverage reflected a $1,000,000 limit of liability on the building and $140,000 for loss of rents. The liability coverage set out the policy's limits for bodily injury and property damage, premises medical payments, and personal injury liability. Policy CP8802030 was issued April 28, 1981, with a policy period from March

23, 1981, to March 23, 1984, on the property listed as 1004–06 Walnut. The property coverage schedule reflected a limit of $45,-000 on the building, with no loss of rents coverage shown.

On April 3, 1982, a fire started in the restaurant tenancy located in the building at 1006 Walnut and destroyed the entire building. Velco, Ltd. was the restaurant tenant whose alleged negligence caused the fire. Appellants submitted their claim to insurers for fire damage to the premises and lost rent. By letter dated October 27, 1982, insurers denied coverage on the ground that appellants had concealed the restaurant tenancy which increased the insurers' hazard without notice and, thus, had breached the terms of the insurance policy.

In November 1986 appellants sued respondents. Count one of appellants' third amended petition directed only against Feuerbacher alleged breach of his fiduciary duty as a broker. Counts two, three and four against only insurers raised claims for breach of oral contract, promissory estoppel, and breach of the insurance contract with vexatious refusal to pay. Appellants contemporaneously filed an action in federal court against Christopher Veltmann, the restaurant tenant. While that petition is not before us, the record refers to it as one sounding in tort.

On June 20, 1988, appellants settled their separately filed claim in federal court against Christopher Veltmann and Velco, Ltd. for the fire loss for $90,000 and executed a general release of all claims. Shortly thereafter, in October 1988, respondents argued and submitted their two motions for summary judgment in the present case. The trial court sustained the two motions on December 9, 1988, without making any specific findings of fact or conclusions of law. We presume the orders were made on the grounds specified in the motion. *Elsie v. Firemaster Apparatus,* 759 S.W.2d 305, 306 (Mo.App.1988).

Appellants' first point contends that the general release they executed in favor of Christopher Veltmann and Velco, Ltd. in the federal action does not entitle respon-

dents to summary judgment on all counts contained in appellants' third amended petition against respondents.

The "Release of All Claims" executed by appellants provides in pertinent part:

FOR AND IN CONSIDERATION of the payment to me/us at this time of the sum of Ninety Thousand and 00/100—Dollars ($90,000.00), the receipt of which is hereby acknowledged, I/we, being of lawful age, *do hereby release,* acquit and forever discharge *Christopher Veltmann and Velco, Ltd.,* and his/her/their heirs, administrators, executors, agents, servants, employees, successors and assigns, *and all other persons, corporations and organizations of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of or in any way growing out of any and all known and unknown personal injuries and property damage resulting or to result from an incident* that occurred on or about the 3rd day of April, 1982, at or near at or near (sic) 1006 Walnut, Kansas City, MO. (Emphasis added.)

Appellants maintain that the release applies to respondents only if it can be adduced that appellants intended to release respondents. Appellants argue that the intention of the parties presents a fact question properly left for the jury's determination and not a matter for summary judgment. Respondents state that the release expressly provides for the release of all persons or corporations from all liability which in any way arises out of the April 3, 1982, fire. They contend the language of the release clearly operates to discharge them from any liability arising out of the fire.

■ Thus, the issue before us is whether the release encompasses respondents. In reaching our decision we are guided by *State ex rel. Normandy Orthopedics, Inc. v. Crandall,* 581 S.W.2d 829, 833 (Mo. banc 1979), *quoting Williams v. Riley,* 243 S.W.2d 122, 124 (Mo.App.1951), which stated the following:

As with any other contract, the lodestar of construction should be "that the intention of the parties shall govern," ... and as to releases in particular, "[A]ny question regarding the scope and extent of a release is to be determined according to what may fairly be said to have been within the contemplation of the parties at the time the release was given, which, in turn, is to be resolved in the light of all the surrounding facts and circumstances under which the parties acted."

■ Another precept in the construction of releases is the rule that "when a release contains both general and specific language, the general language 'will be presumed to have been used in subordination to [the specific], and will be construed and limited accordingly.'" *Hawes v. O.K. Vacuum & Janitor Supply Co.*, 762 S.W.2d 865, 867–68 (Mo.App.1989), *quoting Holly Investment Co. v. Land Clearance for Redevelopment Authority of Kansas City*, 646 S.W.2d 126, 129 (Mo.App.1983).

■ Applying the foregoing rules, we hold the trial court erred in finding as a matter of law that respondents are encompassed within the release. Although the release does use the general language "all other persons, corporations and organizations," the specific matter referred to is all actions "growing out of any and all known and unknown personal injuries and property damage resulting ... from an incident that occurred on or about the 3rd day of April, 1982", *i.e.* the fire at appellants' property. No other matters are covered or mentioned in the release; therefore, none can be said to have been within the contemplation of appellants and Christopher Veltmann at the time the release was signed. The release, by its very terms, is limited to the release of Christopher Veltmann and others for their tortious conduct resulting in personal injuries and property damage from the fire, and does not extend to respondents for their alleged breach of the insurance policy contract covering appellants'· property. Accord, *Holly Investment Co. v. Land Clearance for Redevelopment Authority of Kansas City*, 646 S.W.2d 126, 129 (Mo.App.1983).

*Holly Investment Co.*, 646 S.W.2d 126, presented a scenario similar to the case at bar. In *Holly Investment Co.*, plaintiff, the owner of certain rental properties, had sought a loan from the city redevelopment authority (LCRA). A condition of the loan was proof of fire and extended insurance coverage. An insurance agent procured an insurance policy for owner. A fire subsequently occurred on owner's property. The insurance company refused payment and owner sued insurance company in federal court. During the pendency of that litigation, it was determined the insurance policy provided only builder's risk coverage; the owner and insurance company entered into a settlement and the owner executed a general release in favor of the insurance company. The owner then filed its action against LCRA alleging that LCRA had negligently secured the wrong coverage from the insurance company on the owner's behalf. LCRA asserted, as do respondents' here, that it was a party in contemplation as a releasee under the terms of the release executed in federal court between the owner and the insurance company. 646 S.W.2d at 128–29. Similarly to the general release before us now, the release in *Holly Investment Co.* contained the broad phraseology "and all other persons, firms and corporations whomsoever." *Id.* at 129. The Western District rejected LCRA's position. *Id.*

The Western District held that "an action for the negligent securing of insurance coverage cannot be said to be 'under the policy'," and determined that the release executed in favor of the insurance company in federal court on Holly Investment Company's contract claim was irrelevant to the investment company's action in state court against LCRA for negligent procurement of insurance. *Id.* The Western District further stated as follows:

> The release, by its very terms and upon the face thereof, is limited to the release of St. Paul [insurer] under the terms of the policy of St. Paul. There is nothing upon this record to reveal that anything but the release of St. Paul, upon its 'builder's risk' policy, for the

amount of that policy only, and the dismissal of the federal court action was ever contemplated as between Holly and St. Paul.

. . . .

The trial court further erred in not refusing the release as evidence and in its failure to rule that L.C.R.A. was not a party released therein.

*Id.*

We, likewise, do not believe the release here affords respondents an escape hatch. None of the respondents were named in the release; respondents were not parties to the federal court action; and respondents made no contribution to the settlement effectuated by the release.

■ One other matter pertaining to the release requires further discussion. Respondent Feuerbacher has asserted that he, unlike respondent insurance companies, is a joint tortfeasor with Veltmann; therefore, he concludes that under Missouri law, the release in fact protects him from any liability as a matter of law.

Missouri decisions have established that a broadly-worded release, such as here, does constitute a bar to subsequent actions against an unnamed non-party as a matter of law where the unnamed non-party and the party named in the release are joint tortfeasors. *See, e.g., State ex rel. Normandy Orthopedics, Inc. v. Crandall*, 581 S.W.2d 829 (Mo. banc 1979); *Ellis v. Reisenbichler*, 712 S.W.2d 468, 469 (Mo.App. 1986); *Clark v. Booth*, 660 S.W.2d 316, 318 (Mo.App.1983).

Although appellants' action against Feuerbacher for breach of his fiduciary duty as an insurance broker does sound in tort, there is no genuine issue of material fact about his status. The pleadings establish respondent Feuerbacher is not a joint tortfeasor, despite his bare assertion to the contrary. Feuerbacher's alleged negligence was his failure to procure the insurance policy appellants requested. The negligence of Veltmann, the restaurant owner, is accepted by all as the cause of the fire which damaged appellants' building. Veltmann and Feuerbacher are independent, not joint, tortfeasors because they acted

independently of each other and their wrongs against appellants were committed at different times. *Accord, State ex rel. Normandy Orthopedics v. Crandall*, 581 S.W.2d at 831 n. 1; *Staehlin v. Hochdoerfer*, 235 S.W. 1060, 1062 (Mo.1921). Respondent Feuerbacher is not a joint tortfeasor within the ambit of the release and he, like respondent insurance companies, cannot successfully assert that the release operates to protect him from any liability to appellants. To the extent that the trial court's grant of summary judgment in favor of respondents was based on their assertion of the release, summary judgment was improvidently granted.

■ Appellants' second point claims error in the granting of respondent Feuerbacher's motion for summary judgment based on his assertion of the statute of limitations. On November 21, 1986, appellants filed their action against Feuerbacher, sounding in tort, which alleged that he was negligent in failing to obtain the amount and scope of coverage that he had agreed to place and in failing to notify appellants that the coverage under the policies issued differed from the coverage they had requested. Neither appellants nor Feuerbacher dispute that the applicable statute of limitations is the five year period which begins to run when plaintiff's damage is sustained and capable of ascertainment. §§ 516.100 and 516.120 RSMo 1986.

In his motion for summary judgment respondent Feuerbacher asserted that the statute of limitations barred appellants' claim against him. He maintained that appellants' action for negligence accrued when the insurance policies were delivered to Community Title on or about September 1, 1981, because appellants should have discovered the alleged breach and resultant damage at that time. Appellants, on the other hand, submit that their cause of action arose on April 3, 1982, the date of the fire, so their lawsuit filed in November 1986 was within the five year limitations period. One commentor has observed that no Missouri cases have addressed the precise issue whether the statute begins to run when the policy in question is issued,

when the loss is sustained, or when coverage is denied by the insurer. *See* McCarver, "Agent or Broker Liability for Failure of Insurance Coverage," 45 J.Mo.Bar 17, 23 n. 56 (1989).

Under the terms of § 516.100, "the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment ..." Feuerbacher's argument that the statute began to run when he delivered the insurance policies to appellants because an examination of the policies at that time would have revealed his errors is without merit. Feuerbacher is in the business of insurance brokerage, and a similar argument made on behalf of an abstractor of real estate titles was rejected in *Thorne v. Johnson*, 483 S.W.2d 658, 663 (Mo.App. 1972), where the court said:

> It would be absurd to lay down as a legal requirement that these parties, in addition to hiring a professional abstractor, should also have to make their own independent laymen's investigation to ascertain whether their professional agent had done its job properly.

Furthermore, at the time the policies were delivered, appellants had no claim against Feuerbacher because none of the risks appellants sought to insure against had occurred; and none did occur until April 3, 1982, the date of the fire, which was well within the five year period of limitations. *Cf. Southern Cross Lumber & Millwork Company v. Becker*, 761 S.W.2d 269, 271 (Mo.App.1988); *Title Insurance Company of Minnesota v. Construction Escrow Service, Inc.*, 675 S.W.2d 881, 887 (Mo.App. 1984).

We therefore reverse the trial court's grant of summary judgment in favor of respondent Feuerbacher and remand for further proceedings.

Appellants' third point asserts the trial court erred in granting summary judgment in favor of respondent insurance companies on count two because a genuine issue exists whether appellants assented to the change in the insurance policy as issued from the insurance coverage respondents had originally agreed to furnish. In count two of their petition, appellants sought damages arising out of Safeco's alleged failure to fulfill its oral contract to provide a minimum of $800,000 in fire, casualty and loss of rents insurance on appellants' property as a whole and not as two separate buildings. Their breach of contract claim specifically alleged as follows:

> Defendants Safeco, General and First National breached their agreement to provide Plaintiffs with the requested insurance in that, after accepting Plaintiffs' application for insurance and agreeing to be bound for $800,000.00 all risk coverage for the Property, Defendant Safeco, without notifying Plaintiffs or obtaining their approval, caused Defendant General to issue, and Defendant First National to assume, two separate policies (CP8802023 and CP8802030) of insurance on the Property, which had the effect of dividing the Property into two parcels, 1000–1002 Walnut Avenue and 1004–1006 Walnut Avenue. Such coverage on 1004–1006 Walnut was wholly inadequate for Plaintiffs' needs and Defendants Safeco, General and First National knew of such inadequacies.

Respondents presented the trial court with two reasons urging their entitlement to summary judgment. First, they stated that, as a matter of law, appellants may not maintain an action for breach of an alleged oral agreement which occurred prior to the issuance of the written insurance policy. Second, even assuming appellants had a pre-policy understanding that the insurance coverage for the building at 1004–1006 Walnut would be in excess of $45,000, the pre-policy understanding merged into the written agreement and appellants' retention of the policy for over one year without protest constitutes their acceptance of the policy as issued.

Appellants argue that respondent insurers have overlooked that when the parties make a mutual mistake of fact where the policy issued does not reflect their understanding of coverage, the parties are entitled to reformation of the policy to enforce

the oral agreement to reflect the parties' original understanding. The flaw in appellants' contention is that count two of their petition does not allege fraud, duress, ambiguity or mutual mistake, all grounds for reformation. Furthermore, appellants seek redress in their count two by way of damages, not reformation of the written instrument. We find appellants' arguments wholly unpersuasive.

The record before us fails to reflect an issue of material fact whether appellants assented to the written insurance policy. It is undisputed that appellants had possession of the two written insurance policies covering both buildings for approximately one year without voicing any objection that the policies' terms differed from those specified during their pre-policy discussion of the coverage desired. During that year-long period, Community Title requested the insurer to change the named insured from Community Title Company of Kansas City to Community Title and to add James Davis as an additional insured under the policy covering 1000–1002 Walnut. Community Title also renewed the policy covering 1000–1002 Walnut for an additional year and increased the coverage for the building from $1,000,000 to $1,077,000.

■ Even accepting Community Title's position that the coverage issued differed from the coverage requested, we find no basis to permit appellants' action for breach of the pre-policy oral agreement. The sending of a policy different from that applied for constitutes a counter-offer; the insured has a reasonable time to accept or reject the policy and if he keeps it a reasonable length of time, he is deemed to have accepted the policy or counter-offer. *Kap-Pel Fabrics, Inc. v. R.B. Jones & Sons, Inc.*, 402 S.W.2d 49, 57 (Mo.App.1966). In *Young v. Ray America, Inc.*, 673 S.W.2d 74 (Mo.App.1984), it was held:

> [E]ven if a material variance exists between the oral agreement and the written policy concerning the named insured, the prior oral agreement must be deemed merged into and superseded by the later written insurance policy where the policy has been delivered to the insureds, read

by them, altered in accordance with their requests regarding the proper names of the insureds, and retained by the insureds until the policy's expiration and then renewed for an additional year without further changes.

*Id.* at 79. Similarly to *Young,* we believe in circumstances such as these that the written policy issued controls over any prior oral agreements for the reason that the insureds' actions subsequent to their receipt of the written policy constitute acceptance of its terms. As a matter of law, an action for breach of the prior oral agreement is precluded. Appellants' third point is denied.

■ Appellants' fourth point claims that the trial court erred in granting summary judgment in favor of respondent insurers on count three of appellants' petition. Count three of their petition alleged in pertinent part as follows:

> [Respondent insurance companies] promised to provide adequate coverage, and plaintiffs relied on that promise to their detriment, in that plaintiffs were not provided with adequate fire insurance coverage or any rental insurance coverage, and such failure on the part of defendants ... resulted in loss to plaintiffs of approximately Two Hundred Eighty Thousand Dollars ($280,000.00) upon the destruction by fire of 1004–1006 Walnut, said amount representing fair market value of such premises and loss of rental income.

Appellants posit that promissory estoppel may be used to broaden the insurance coverage already afforded to the named insured in a written policy. As authority, appellants cite *Taylor v. Commercial Union Insurance Co.*, 614 F.2d 160 (8th Cir. 1980), and *Salerno v. Western Casualty & Surety Co.*, 336 F.2d 14 (8th Cir.1964).

Both are factually distinguishable from the case at bar. In both those cases, the court did permit an insured to recover a benefit not provided by the terms of the written policy. Those cases involved situations where the insurer was estopped from denying coverage because the insurer initially had misinformed the insured *after*

the loss was sustained that such loss was within the scope of the written policy. In this case, appellants are attempting to engraft pre-policy oral representations upon the written policy which they had for about a year before they sustained the fire loss. Estoppel and waiver are not intended to create new coverage or rights not previously contained in the insurance policy based on the insurers' oral representations *prior* to the issuance of the written policy. Appellants' fourth point is denied.

Appellants' final point asserts the trial court erred in granting respondent insurers' motion for summary judgment on count four of appellants' petition. Count four of their petition alleged respondent insurers had breached their agreement to pay under the policy and that their failure to pay constituted a vexatious refusal to pay under § 375.420 RSMo 1986. Respondent insurers' answer had averred that the policy was void *ab initio*. Then, in their motion for summary judgment respondent insurers asserted the following two grounds: one, appellants' settlement with Veltmann breached the insurance policy by impairing any subrogation rights of respondents against Christopher Veltmann and Velco, Ltd., thereby voiding coverage; two, appellants' settlement constituted a total recovery for their loss so that appellants were barred from a claim based solely on vexatious refusal to pay.

Appellants argue a genuine issue of material fact existed whether insurers had waived their right to assert their policy defense of loss of their subrogation rights. They state that respondent insurers repudiated the insurance policy when they refused to cover appellants' loss on the grounds that appellants had affirmatively concealed the restaurant tenancy and increased insurers' risks without notifying them. They conclude that by denying coverage and then sitting idly by while appellants pursued an action against Veltmann, the wrongdoers, respondent insurers, have waived their right to insist appellants do nothing to impair insurers' subrogation rights.

■ We are aware that Missouri recognizes that a release of the tortfeasor by the insured which destroys the insurers' subrogation rights bars the insured from recovering under the policy as a matter of law. *Dickhans v. Missouri Property Insurance Placement Facility*, 705 S.W.2d 104, 106 (Mo.App.1986).

■ There is authority, however, in other jurisdictions for the proposition that where the insurer erroneously and wrongfully denies coverage, it cannot subsequently invoke the exclusionary language of the policy which would relieve the insurer of its obligation to make payment when settlement of the action against the tortfeasor was without the written consent of the insurer. *Havanich v. Safeco Insurance Co. of America*, 557 F.2d 948, 950 (2nd Cir.1977), *citing Calhoun v. State Farm Mutual Automobile Insurance Co.*, 254 Cal.App.2d 407, 62 Cal.Rptr. 177 (1967); *Andeen v. Country Mutual Insurance Co.*, 70 Ill.App.2d 357, 217 N.E.2d 814 (1966), *cert. denied*, 385 U.S. 1036, 87 S.Ct. 775, 17 L.Ed.2d 682 (1967); *Childs v. Allstate Insurance Co.*, 237 S.C. 455, 117 S.E.2d 867 (1961). *See also Russell Gasket Co. v. Phoenix of Hartford Insurance Co.*, 512 F.2d 205, 209 (6th Cir.1975).

The rationale for finding an insurer has waived the defense that the policy contains a clause requiring the insurer's consent to any settlement of any action by the insured once the insurer has denied coverage is found in *Stephens v. State Farm Mutual Auto Insurance Co.*, 508 F.2d 1363 (5th Cir.1975). In *Stephens* the court said:

> [C]laimant should not be required to approach his insurer, hat in hand, and request consent to settle with another when he has already been told, in essence, that the insurer is not concerned, and he is to go his way. It is difficult to see why an insurer should be allowed, on the one hand, to deny liability and thus, in the eyes of the insured, breach his contract and, at the same time, on the other hand, be allowed to insist that the insured honor all his contractual commitments. When the denied liability does not, in fact, exist, no harm can be done

the insurer by the insured's settlement with a third party. When the denied liability does exist (as may be later adjudicated), admittedly the subrogation rights of the insurer could be compromised by settlement. However, in the case of existent, denied liability, the denial is a breach of contract on the part of the insurer and its breach should, by rights, relieve the insured of the punitive effects of his failure to comply with consent provisions of the insurance policy. *Id.* at 1366. *See also Havanich v. Safeco Insurance Co.*, 557 F.2d 948. Although the settlement in *Stephens* was with another insurance company and did not impair the insurer's subrogation rights against the uninsured motorist tortfeasor, *Stephens*, 508 F.2d at 1366, we think its policy rationale remains convincing in situations such as here where the insured sues and settles without the insurer's consent, but with the insurer's knowledge, after the insurer has denied coverage.

In the recent case of *Cologna v. Farmers and Merchants Insurance Co.*, 785 S.W.2d 691 (Mo.App.1990), the Southern District made the following observation:

> There is authority for the proposition that an insurer's unjustified refusal to defend upon the ground that the claim is not covered by the policy relieves the insured from his contract obligation not to settle and the insured is at liberty to make a reasonable settlement or compromise without losing his right to recover on the policy. It is also said that to bind the insurer the settlement must be reasonable and entered into in good faith. *Annot.* 49 A.L.R.2d 744 § 22[a] (1956); 44 Am.Jur.2d Insurance § 1420, p. 367 (1982).

785 S.W.2d at 701. *Cologna* is helpful, although it differs from our situation where the insurance companies' refusal to pay prompted the insured's settlement without insurers' consent. In *Cologna* the insurer had refused to defend its insured before the insured settled without the insurer's consent.

We are persuaded by these authorities and the logic of appellants' argument. In-

surers here initially asserted in their answer that the policy was void *ab initio*, thereby shielding themselves from liability for any damages appellants incurred by the acts of their restaurant tenant. Having left appellants to their own devices, insurers cannot now wield the subrogation restriction in the policy as a sword to destroy appellants' claim.

■ Here, the question remains whether insurers erroneously and wrongfully denied coverage. Respondents' answer to count four of appellants' amended petition was that the policy was void *ab initio* for appellants' failure to disclose the restaurant tenancy. Insurers, by their answer claiming, in essence, that the policy was vitiated by appellants' misrepresentation in the procurement of the policy, effectively raise the question of fraud. Insurers' own answer thus creates a fact question rendering summary judgment on count four inappropriate.

We have also considered respondents' position that appellants' receipt of $90,000 in settlement proceeds from Christopher Veltmann constitutes a total recovery for their loss. Respondents emphasize that "Community Title has already received money from the party responsible for causing the loss in excess of the total limit of liability on the policy ($45,000) plus interest to date". Thus, respondents conclude their obligation under the policy terminated when Community Title received settlement monies in excess of the $45,000 policy limits plus interest from the party responsible for causing the subject property damage.

Respondents are correct that the settlement sum exceeds the amount Community Title could recover if it obtains a judgment against respondents for the face value of the policy plus loss of use of the proceeds, interest. The fallacy in respondents' argument is the premise that Community Title has been made whole by the settlement with Christopher Veltmann and Velco, Ltd.

The insurance policy here included a page captioned "Standard Form Fire Policy Endorsement." The endorsement specifically provided that the insurance company "to an amount not exceeding the limit of

liability specified in the Declarations, does *insure* the Insured ... *to the extent of the actual cash value* of the property at the time of the loss ..." [Emphasis added.].

Community Title had settled with the third-party tortfeasor for $90,000. Nevertheless, Community Title and respondents dispute the amount of the insured's loss. The "actual cash value" of the property at the time of the loss remains in issue. Community Title's expert valued the fire loss at $130,000. Community Title also claims entitlement to compensation for loss of use of the insurance proceeds from the time the insurers denied Community Title's claim under the authority of *Victor v. Manhattan Life Insurance Co.*, 772 S.W.2d 826, 832 (Mo.App.1989). Accepting Community Title's figures on its loss, its settlement did not make it whole. The aggregate of the settlement and the policy limits amount to a payment approximating its loss in full according to Community Title's expert. Thus, any payment made under the insurance policy does not, necessarily, result in a double recovery by the insured for the loss sustained. Despite insurers' argument, recovery by Community Title under its insurance policy does not violate the well-entrenched precept that there may be only one full satisfaction for injuries. *Normandy Orthopedics*, 581 S.W.2d at 833 n. 3, *quoting Vinson v. East Texas Motor Freight Lines*, 280 S.W.2d 124, 133 (Mo. 1955). Furthermore, in *Normandy Orthopedics, id.*, our Missouri Supreme Court cited with approval the ruling in *Ash v. Mortensen*, 24 Cal.2d 654, 150 P.2d 876 (1944), that the question of full satisfaction was one of fact for the jury's determination.

■■■ We do not believe the valued policy statute undermines this result. Section 379.140, RSMo 1986, provides that "the *defendant* shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property ..." (Emphasis added.) The purpose behind the valued policy legislation is to prevent overinsurance. *Jones v. State Farm Fire and Casualty Co.*, 740 S.W.2d

708, 710 (Mo.App.1987). Under these statutes, the insurer is estopped from denying that the value of the insured property at the time the policy was written, was equal to the policy amount. *Marti v. Economy Fire & Casualty Co.*, 761 S.W.2d 254, 258 (Mo.App.1988). These statutes, in essence, preclude an insurer from questioning the valuation stated in the insurance policy after the loss has occurred, and therefore theoretically encourage insurers to investigate the value of the property when coverage is purchased. *See, e.g., Stahlberg v. Travelers Indemnity Co.*, 568 S.W.2d 79, 83 n. 3 (Mo.App.1978). By compelling insurers to pay the value agreed upon when the policy was issued, the statutes seek to prevent insurance companies from taking reckless risks in order to obtain large premiums. The statutes impose a duty on the insurance companies to ascertain whether applicants have obtained excessive coverage. The record here suggests some shortcomings by respondent insurers in investigating the property. However, the situation here is not one of overinsurance, but underinsurance, if, as Community Title has asserted, its fire loss is greater than the amount of insurance it had procured. The factual question of the property's actual cash value is yet unresolved. These considerations buttress our belief that summary judgment on Count IV was improvidently granted.

Based on the foregoing, we affirm the grant of summary judgment on Counts II and III and reverse and remand the judgment on Counts I and IV.

HAMILTON, P.J., and CARL R. GAERTNER, J., concur.