**Marjory Griffin LEAKE, Plaintiff,**

v.

**H. C. JONES, Individually and as Former Collector of Internal Revenue, Defendant.**

**James C. LEAKE, Plaintiff,**

v.

**H. C. JONES, Individually and as Former Collector of Internal Revenue, Defendant.**

**Civ. Nos. 5490, 5493.**

United States District Court
W. D. Oklahoma.
June 15, 1955.

Mosteller, Fellers, Andrews & Loving, Oklahoma City, Okl., for plaintiffs.

Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl., Ethan Stroud, Special Asst. to the Atty. Gen., for defendant.

CHANDLER, District Judge.

Within causes came on for hearing on plaintiff's motion for summary judgment, on April 22, 1955, before the Honorable Stephen S. Chandler, Jr., United States District Judge, sitting without a jury, the plaintiffs appearing by their attorneys, L. Karlton Mosteller, James D. Fellers, and Graham Loving, Jr., and the defendant appearing by his attorneys, Leonard L. Ralston, Assistant United States Attorney for the Western District of Oklahoma, and Ethan Stroud, Special Assistant to the Attorney General of the United States; and the cause having been submitted on the pleadings, affidavits, exhibits and arguments of counsel, and the court being duly advised, now enters its opinion on plaintiff's motion for summary judgment, as follows:

Marjory Griffin Leake, plaintiff, in No. 5490, and her husband, James C. Leake, plaintiff, in No. 5493, filed their complaints seeking refunds of income taxes paid on moneys received by them from the redemption of certain shares of KOMA, Incorporated, preferred stock in 1947. James C. Leake owned no shares, but is involved because of the Community Property Act, 32 U.S.C.A. §§ 51–82 note, which was then in effect in the State of Oklahoma.

Marjory Griffin Leake had for some time been the owner of 45 shares of

KOMA, Incorporated, preferred stock. John Toole Griffin, her brother, also owned some of such preferred shares. In 1947, the Board of Directors of KOMA, Incorporated, hereafter called the Corporation, resolved to and did redeem all of its outstanding preferred stock. Marjory Griffin Leake surrendered her stock and received $4,500, that being the same amount as had been paid to the Corporation at the time of the issuance of these 45 shares. Defendant asserted against each plaintiff additional income taxes for the year 1947, in the amount of $1,243.40, on the ground that the funds distributed in the stock redemption were essentially equivalent to a dividend and taxable as ordinary income. These amounts were paid by plaintiffs on August 10, 1950, and on October 5, 1950, plaintiffs each paid the additional sum of $179.39 as interest on the alleged tax deficiency.

Plaintiffs duly filed claims for refunds of the amount paid, and on the disallowance of such claims by the Commissioner of Internal Revenue, plaintiffs commenced separate suits for $1,422.79 each, plus interest thereon from the date of payment, and for their costs. Plaintiffs' complaints recited the facts set forth herein and also alleged that the action of the Commissioner in disallowing plaintiffs' claims for refunds had the erroneous and illegal effect of taxing as a dividend a sum of money received by plaintiffs which was the return of capital upon the call of plaintiffs' stock. Defendant's answers denied plaintiffs' allegations that the Commissioner in disallowing plaintiffs' claims for refund acted illegally and erroneously.

While these causes were pending, Cause No. 5489, being the action of John Toole Griffin against this defendant for a refund of the additional taxes assessed against him on the redemption of his preferred stock in KOMA, Incorporated, proceeded to trial before the Honorable Edgar S. Vaught, United States District Judge for the Western District of Oklahoma, and a jury. Defendant in that case, as in the instant proceedings, resisted the refund on the ground that the funds distributed by the Corporation were distributed at such time and in such manner as to be essentially equivalent to a dividend within the provisions of the 1939 Internal Revenue Code, 26 U.S.C.A. § 115(g). At the trial Griffin and defendant adduced profuse evidence in support of their respective positions, Griffin attempting to show that the distributions were not taxable as dividends and defendant attempting to show that the redemption of the preferred stock by the Corporation was essentially equivalent to a dividend and therefore taxable as such. At the conclusion of presentation of evidence, both parties moved for a directed verdict. The trial judge reserved ruling on the motions and submitted the case to the jury. The jury found for the plaintiff and judgment was rendered in accordance therewith. Subsequently, the defendant's motion for judgment in accordance with motion for a directed verdict or for a new trial was denied. Defendant appealed to the United States Court of Appeals for the Tenth Circuit and the judgment of the lower court was affirmed. Jones v. Griffin, 10 Cir., 216 F. 2d 885, 888.

It appearing to the Court upon motion and affidavit that Causes No. 5490 and No. 5493 involved a common question of law and fact, an order consolidating these actions has been entered.

Plaintiffs have now moved for summary judgment on the grounds that the pleadings, affidavits, exhibits and evidence in these cases, including the pleadings, evidence and exhibits in the Griffin case, Cause No. 5489, show that plaintiffs are entitled to judgment as a matter of law. The record of the evidence in the Griffin case is attached as part of an affidavit filed on behalf of plaintiffs and it is avowed that the facts contained in that record are the identical facts which would be presented in a trial of these proceedings and that there is no genuine dispute as to the facts involved. The defendant

has not denied these representations by affidavit or otherwise.

In the Griffin case the Court of Appeals summarized the facts adduced upon the trial as follows:

"The corporation was engaged in the operation of a radio station in Oklahoma City, Oklahoma. In 1939, it began operations with an initial paid-in capital of $300,000 and a paid-in surplus of $30,000. It was authorized to issue and did issue 300 shares of common stock, each of the par value of $100, and 2,700 shares of preferred stock, each of the par value of $100. The articles of incorporation provided among other things that the preferred stock should bear interest at the rate of six per cent per annum and should be guaranteed and secured by a first lien upon all of the assets of the corporation; that the owners and holders of the stock, both common and preferred, should have voting privileges; that the holder of any preferred stock should be entitled to receive and the corporation should be bound to pay him dividends at such rates as would be sufficient to pay the interest on the stock held and owned by him; and that the directors should, from time to time, provide for the payment and retirement of such preferred stock as in their judgment would be to the best interest of the corporation. The common stock was originally subscribed by and issued to the following named individuals in the respective amounts stated, J. T. Griffin, 50 shares, Marjory Griffin, now Marjory Griffin Leake, 100 shares, the taxpayer, 144 shares, Bryan Cole, 3 shares, and Bryan Mathes, 3 shares. Cole and Mathes held their shares as nominees for J. T. Griffin. The original 2,700 shares of preferred stock were purchased by J. T. Griffin. Subsequently during the year 1939, he sold some of his shares to others; and on January 1, 1940, the preferred stock was owned as follows: J. T. Griffin, 2,135 shares, Adele G. Rea, 150 shares, E. M. Doke, 100 shares, Tulsa Broadcasting Company, 100 shares, Carol G. Kuykendall, 50 shares, Mrs. C. S. Tinch, 50 shares, Marjory Griffin Leake, 45 shares, Rebecca Tinch, 25 shares, Carl S. Tinch, Jr., 25 shares, and the taxpayer, 20 shares. The prescribed dividends were paid on the preferred stock during the years 1939, 1940, and 1941. And dividends were paid on the common stock during the years 1941, 1942, and 1943, in the amounts of $3,000, $7,500, and $3,000, respectively. No dividends were paid during the years 1944, 1945, 1946, and 1947. During the years 1941 to 1945, the corporation redeemed and cancelled 470 shares of the preferred stock by paying the holders thereof the sum of $47,000 which was the amount originally paid for such stock. In the case of each redemption, the sum paid was charged to the preferred stock account of the corporation, and in no instance was it charged to the accumulated earnings and profits available for distribution as dividends. The redemptions and retirements thus made reduced the paid-in capital of the corporation from $300,000 to $253,000. In 1942, J. T. Griffin married Joyce Forbes Griffin. He became ill during that year and died in 1944. The taxpayer and Marjory Griffin Leake were his surviving son and daughter. The stock in the corporation which J. T. Griffin owned at the time of his death became a part of his estate. The will of J. T. Griffin provided that after payment of debts and certain bequests, $\frac{11}{20}$ths and $\frac{9}{20}$ths of the residue of his estate should be distributed to the taxpayer and Marjory Griffin Leake, respectively. And it stated or noted that provision had been made in a pre-marital agree-

ment for his wife, Joyce Forbes Griffin. The taxpayer and Marjory Griffin Leake were named as executors under the will. Dissention arose between the widow and the children of J. T. Griffin and litigation ensued. An agreement was reached under which the widow was given the Griffin home place, certain monetary allowances, and an undivided one-sixth interest in the estate of the decedent. At the time of the death of J. T. Griffin, the corporation was operating its radio station on 5,000 watts of power, day and nighttime. It was the view of the corporation that if the radio station were to maintain its competitive position a program of substantial enlargement, expansion, and new facilities would be necessary; and such program was contemplated. An increase in power to 50,000 watts, day and nighttime, was sought and obtained. A license or permit to establish and operate a frequency modulation station was sought and obtained, and the station was installed. An application was submitted for the establishment and operation of a television station, but a freeze was placed upon all applications for the establishment and operation of television stations and therefore the application of the corporation was not granted. The corporation expended approximately $275,000 in connection with the enlargement of its power and the installation of its frequency modulation station. And it was estimated that the completion of its contemplated program of expansion and improvement would require an additional outlay of approximately $600,-000. In order to carry such program into effect, it would be necessary for the corporation to borrow a large amount of money. A bank was contacted and the corporation was advised that any loan would be second and subordinate to the lien of the owners of preferred stock, and

that the bank was unwilling to make any loan so long as that stock was outstanding. Faced with that situation, the board of directors of the corporation, consisting of the taxpayer, Marjory Griffin Leake, James C. Leake, Bryan Cole, and Bryan Mathes, adopted a resolution calling in all of the outstanding preferred stock for redemption and retirement. The stock was surrendered and retired by crediting to each preferred stockholder the amount originally paid to the corporation for such stock. That reduced the capital of the corporation from $253,000 to $30,000. The reduction was charged to the preferred stock account. The accumulated earnings and profits available for the distribution of dividends were not reduced. The corporation then borrowed from the bank $130,000, for which it executed a note due six months from date, with interest at the rate of 2½ per cent per annum. The corporation paid to each of the former owners of preferred shares the amount credited to his account by reason of the redemption of the stock. After the redemption and retirement of the preferred stock, the corporation did not diminish or discontinue its operations, and it continued to operate at a profit. The note given to the bank was paid before the close of the calendar year of its execution, and after that time the only money which the corporation borrowed was $25,000. At the time of the redemption and retirement of the preferred stock, the corporation had accumulated earnings and profits which exceeded in amount the outstanding preferred stock. But the earnings and profits were not in cash. They were invested in property used in the operation of the business of the corporation. And the amounts paid to the several owners of preferred stock, including the taxpayer, were not charged to the accumulated earn-

ings and profits. They were charged to the preferred stock account. It thus is made clear that the corporation was liable for dividends on the preferred stock computed at not less than six per cent per annum and such dividends constituted a first lien on all of its property. No liability for dividends during the six years preceding the retirement of the preferred stock was recognized on the books of the corporation, and none was recognized on the books when the stock was redeemed. But the liability existed and was being increased from year to year. A bank was willing to lend the corporation money with interest at the rate of 2½ per cent per annum as soon as the preferred stock was redeemed and retired, but not before. By changing from outstanding preferred stock with a guaranteed dividend of not less than six per cent per annum to borrowed money at interest of approximately 2½ per cent per annum, the corporation could effectuate a substantial saving and could enjoy a wider area of flexibility in its fiscal operations. Too, it was feared that some of the preferred stock would be sold; that it might find its way into the hands of the widow of J. T. Griffin; that friction might arise in the operation of the business of the corporation; that such friction might be inimical to the best interests of the corporation; and that such hazard could be avoided by the redemption and retirement of the stock. The redemption and retirement of the preferred stock bore a marked relation to the business of the corporation. The evidence and the inferences fairly to be drawn from it presented basis for the view that prudent business reasons on the part of the corporation prompted the redemption and retirement of the stock; that it was dictated by the justifiable needs of the corporation; that the furtherance of the best in-

terests of the corporation underlay the action; and that tax avoidance was not its genesis. And the distribution was substantially different and dissimilar from what it would have been had the amount thereof been distributed as a dividend on the common stock. Resulting from the distribution, one stockholder was eliminated entirely; another, who previously had the controlling voting interest, was reduced to a relatively minor position; and the taxpayer, who theretofore had only a small proportional interest, became the major stockholder."

Defendant resists plaintiffs' motion with argument that the decided cases hold that whether a distribution is essentially the equivalent of a dividend is a question of fact; that plaintiffs' requests for jury trials are a recognition of the existence of an issue of fact; that the jury determination in the Griffin case that John Toole Griffin did not receive a taxable dividend is irrelevant to the determination of whether plaintiffs in this case received a taxable dividend; that KOMA, Incorporated, was not a party to either suit and, therefore facts concerning its activities are irrelevant in considering plaintiffs' motion for summary judgment; that the instant case is not identical in all respects with the Griffin case because the parties to the two cases are different; that the "facts concerning" the Corporation, KOMA, Incorporated, bear only indirectly on the ultimate issue; and that as to the question of whether plaintiffs received a distribution substantially equivalent to a taxable dividend there is a genuine and disputed issue of fact.

█ The determination of whether a distribution in redemption of stock is essentially equivalent to a taxable dividend depends upon the character and nature of the redemption. Ordinarily this would present a question of fact to be resolved by a jury. Commissioner of Internal Revenue v. Babson, 7 Cir., 70 F.2d 304,

certiorari denied Helvering v. Commissioner, 293 U.S. 571, 55 S.Ct. 107, 79 L. Ed. 669; Randolph v. Commissioner, 8 Cir., 76 F.2d 472, certiorari denied Randolph v. Helvering, 296 U.S. 599, 56 S.Ct. 116, 80 L.Ed. 425; Commissioner of Internal Revenue v. Champion, 6 Cir., 78 F.2d 513; Brown v. Commissioner, 3 Cir., 79 F.2d 73; Hirsch v. Commissioner [9 Cir., 124 F.2d 24]; Rheinstrom v. Conner [6 Cir., 125 F.2d 790]; Jones v. Dawson, 10 Cir., 148 F.2d 87; Commissioner of Internal Revenue v. Roberts [4 Cir., 203 F.2d 304]; Commissioner of Internal Revenue v. Sullivan, 5 Cir., 210 F. 2d 607; Keefe v. Cote, 1 Cir., 213 F.2d 651.

The redemption here involved, however, has already been fully examined by a court and a jury. This same defendant, in attacking the identical redemption in the Griffin case, presented its evidence and exhibits in an effort to show that it was made at such time and in such manner as to be essentially equivalent to a taxable dividend. At the conclusion of a lengthy trial, the jury, in that case, found that the character of the redemption was such that it was not taxable as a dividend, and the judgment thereon was affirmed by the Court of Appeals. Jones v. Griffin, supra.

Plaintiffs have averred and defendant has not denied that if this proceeding were to proceed to trial the very same evidence adduced by the parties to the Griffin case, of whom this defendant was one, would again be presented.[1] Plaintiff, James C. Leake, was a principal witness in the Griffin case and was examined at length by defendant concerning the redemption in question. Defendant does not deny that the shares of preferred stock involved in these cases were redeemed pursuant to the same resolution of the Corporation's Board of Directors and in the same transaction as were the shares of John Toole Griffin.

Furthermore, the facts show that the distribution in question made to plaintiff, Marjory Griffin Leake, in redemption of her preferred stock in the Corporation was vastly dissimilar from the one she would have received had the Corporation declared a dividend on its stock.[2] In addition, the redemption of the preferred stock drastically changed the proportionate ownership of stock in the Corporation.[3] Clearly the distribution in re-

1. At the hearing on the motion, defendant's counsel could not designate any evidentiary fact that would be different and conceded that had the cases been consolidated for trial and tried together the jury would not have answered the question differently for Majory Griffin Leake than it did for John Toole Griffin.

2. The following schedule shows the disparity between the amounts actually received and the amounts which would have been received had the Corporation declared a pro rata dividend on its common stock in the amount of $223,000.00.

| Stockholder | Amount Received | Dividend Payable |
| --- | --- | --- |
| Estate of J. T. Griffin | $201,500.00 | $ 41,626.67 |
| John Toole Griffin | 2,000.00 | 107,040.00 |
| Marjory Griffin Leake | 4,500.00 | 74,333.33 |
| Adele G. Rea | 15,000.00 | |
| Total | $223,000.00 | $223,000.00 |

3. 

| Number of Shares Owned Prior to Redemption of Preferred | | Number of Shares Owned After Redemption of Preferred | |
| --- | --- | --- | --- |
| Estate of J. T. Griffin | 2,071 | Estate of J. T. Griffin | 56 |
| John Toole Griffin | 164 | John Toole Griffin | 144 |
| Marjory Griffin Leake | 145 | Marjory Griffin Leake | 100 |
| Adele G. Rea | 150 | Adele G. Rea | 0 |
| Total | 2,530 | Total | 300 |

demption of the preferred stock of the Corporation involved in the instant cases, was not made at such time and in such manner as to make the distribution essentially equivalent to the distribution of a taxable dividend.

Plaintiffs have presented evidence and affidavits on which they would be entitled to a directed verdict. Defendant does not endeavor to discredit the record as dishonest and has failed to specify any opposing evidence which could be adduced which would change the result. It cannot be seen how a trial would add any certainty to the conclusion which is inevitable upon this record. Zampos v. U. S. Smelting, Refining & Mining Co., 10 Cir., 206 F.2d 171; Radio City Music Hall Corp. v. U. S., 2 Cir., 135 F.2d 715; Gifford v. Travelers Protective Association, 9 Cir., 153 F.2d 209.

■ The Court is therefore of the opinion that the pleadings, affidavits, exhibits and evidence in this cause and the pleadings, exhibits and record of trial in the Griffin case, which were made a part of plaintiffs' affidavit herein, show that there is no genuine issue as to any material fact and that plaintiffs are, therefore, entitled to judgment as a matter of law pursuant to Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A.

■ It is true that the plaintiffs in this proceeding and in the Griffin case are not the same and that different claims are involved so as to prevent the operation of the doctrines of res judicata or collateral estoppel. Lack of identity of the plaintiffs and the difference in the number of shares involved, however, are the only differences between the Griffin case and this proceeding. The same motivations for application of the doctrines of res judicata and collateral estoppel are present in these cases, and dictate a disposition of the cases which is economical to the parties and to the Court.

"Although a prior judgment has no res judicata effect in a subsequent action where the parties, or those in privity, are different, the law declared in a prior action is given such effect as established principles of stare decisis may warrant." 6 Moore's Federal Practice, Second Edition, Para. 56.17(52), page 2258, footnote 4.

The case of Leishman v. Radio Condenser Co., 9 Cir., 167 F.2d 890, 892, presented the same problem as is present in this proceeding with the issues involved having been previously determined in a proceeding involving different parties. In that case, Leishman commenced suit against defendant Associated alleging an infringement of a particular patent. A Federal District Court in California found that there was no infringement. This was affirmed by the Court of Appeals for the Ninth Circuit. Leishman asserted the same infringement against Condenser and General. Condenser and General brought suit against Leishman in the California District Court for a declaratory judgment that Leishman's patents were not infringed by them. Condenser and General then moved for summary judgment and this was granted. The Court of Appeals for the Ninth Circuit, in upholding the summary judgment, said:

"The pleadings, together with the affidavits, showed that there was no genuine issue as to any material fact and that Condenser and General were entitled to a judgment as a matter of law. It is true that the pleadings, without the affidavits, showed that there was an issue as to a material fact, namely, an issue as to whether the claims were infringed by the Condenser tuners and the General tuners. However, one of the supporting affidavits * * * stated, in substance, that the Condenser tuners and the General tuners did not differ materially from the Crosley tuners. The statement was not controverted and hence was accepted by the California court, and is accep-

ted by us, as correct. In view of our decision in the Associated case, holding that the claims were not infringed by the Crosley tuners, the California court correctly concluded that, in the case at bar, the issue as to whether the claims were infringed by the Condenser tuners and the General tuners was not a genuine issue.

"Leishman contends that the California court erred in following our decision in the Associated case. There is no merit in this contention. Our decision has not been reversed or overruled. The California court was not at liberty to overrule it." [4]

 The purpose of Rule 56, Federal Rules of Civil Procedure, is to provide against the vexation and delay which necessarily come from the formal trial of cases in which there is no substantial issue of fact. S. M. S. Manufacturing Company v. U. S. Mengel Plywoods, Inc., 10 Cir., 219 F.2d 606; Brooks v. Utah Power & Light Co., 10 Cir., 151 F.2d 514; Schreffler v. Bowles, 10 Cir., 153 F.2d 1, certiorari denied, 328 U.S. 870, 66 S.Ct. 1366, 90 L.Ed. 1640; Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568; Fife v. Barnard, 10 Cir., 186 F.2d 655.

The fact that plaintiffs asked for jury trials in their complaints is immaterial to the merits of this motion for summary judgment because when the complaints were filed, judicial determination of the Griffin case had not been made.

Defendant's argument that the activities of the Corporation bear only indirectly on the ultimate issue is without merit. The manner in which and the purpose for which the Corporation redeemed all of its preferred stock in 1947 is the crucial point, and is decisive of this cause as it was of the Griffin case. Defendant has had ample opportunity to characterize the redemption out of which

the distribution here involved was paid as one subject to tax as ordinary income. Defendant, therefore, has not been deprived of his opportunity to litigate the issue.

To deny plaintiffs' motion would make possible the anomalous result of the distribution being a return of capital to one stockholder and ordinary income to the stockholders involved in these cases, although the stock of all of such persons was redeemed in the same transaction.

It is, therefore, ordered that summary judgment be entered in favor of each of the plaintiffs herein and against defendant for $1,422.79 plus interest thereon from the dates of payment thereof, and for their costs.

---

4. See also the recent decision by the same Court in Byrnes v. Mutual Life Insurance Company of New York, 9 Cir., 217 F.2d 497.