**Grover C. GILLUM, Plaintiff,**
v.
**SKELLY OIL COMPANY, a corporation, and J. O. Briggs, Defendants.**
No. 9621.

United States District Court
W. D. Missouri, W. D.
March 18, 1957.

Pine & Mittendorf, Warrensburg, Mo., Harvey H. Shackelford, Jr., Kansas City, Mo., for plaintiff.

C. A. Randolph, Kansas City, Mo., for defendants.

R. JASPER SMITH, District Judge.

For consideration here is "Joint and Separate Motion of Defendants for a Directed Verdict at the close of Plaintiff's Evidence, or for Summary Judgment in favor of Defendants."

The circumstances giving rise to the motion are, to say the least, unusual. The action was originally filed in the Circuit Court of Jackson County, Missouri, against the two defendants named in the caption and Richard W. Kerr, a resident of Missouri. Trial was commenced to a jury. At the close of plaintiff's evidence, plaintiff voluntarily dismissed as to defendant Kerr, the only defendant who was a resident of Missouri. Thereupon the remaining defendants immediately announced in open

court their intention to remove the case from the state court to this court, since by the voluntary dismissal the case had for the first time become removable. The Court suspended the proceedings and gave defendants time provided by law in which to perfect the removal. In due course, defendants, by our leave, filed the motion now being considered for a directed verdict based upon plaintiff's evidence at that time or for a summary judgment in their favor.

Many interesting questions are presented by this motion. We are favored by an exhaustive brief prepared by defendants' counsel. Counsel for plaintiff on the other hand, although requesting and receiving ample time for so doing, for reasons doubtless good and sufficient to him, has failed to file a brief.

█ █ There appears to be no question but that we have a right to proceed either by motion for directed verdict or for summary judgment as requested in this case. Although issues of fact are not to be tried on a motion for summary judgment, we are authorized to determine from the pleadings and the papers whether there is or is not a genuine issue as to any material fact to be tried, and we may resort to and consider extrinsic facts shown by affidavit, admissions and depositions. Byrnes v. Mutual Life Insurance Co. of N. Y., 9 Cir., 217 F.2d 497. The motion may be determined on the evidence on a former trial. Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101. This may be done upon the evidence in a companion case even where plaintiff was not bound under the principle of res judicata or collateral estoppel. Leake v. Jones, D.C., 18 F.R.D. 80; Byrnes v. Mutual Life Insurance Co. of N. Y., supra. Since federal courts take removed cases at the point where the state courts leave off, and when a case is removed the federal court takes it as though everything done in the state court had in fact been done in the federal court, it is quite apparent that this court has authority to consider a motion for a directed verdict at the close of plaintiff's case, using the transcript of the record of the state court, to precisely the same extent as though that record was available to us in a trial in the federal court. Talley v. American Bakeries Co., D.C., 15 F.R.D. 391; Goade v. Vollrath, D.C., 81 F.Supp. 971; Wichita Royalty Co. v. City National Bank, 5 Cir., 95 F.2d 671; Id., 306 U.S. 103, 59 S.Ct. 420, 83 L.Ed. 515; Hurd v. Sheffield Steel Corp., 8 Cir., 181 F.2d 269.

Now as to the record here, considered as always in its aspects most favorable to plaintiff:

█ Plaintiff operated two gasoline service stations in Warrensburg, Missouri, from July, 1938, to August 1, 1949, under written leases from defendant Skelly Oil Company. The leases were for terms of six months each, and by their terms were renewed automatically at the end of each term of six months unless otherwise cancelled in the manner provided therein. Actually the leases remained in force continuously during the entire time, but from time to time were modified by changes in rental provisions from fixed monthly rentals to rentals based on charges per gallon of gasoline sold. In addition to these leases the parties executed certain sales agreements relating to tires, accessories and petroleum products; and operations agreements known popularly at the "SAS Program" or "Skelly Approved Service Program" which related to a standardized manner of operation designed to increase the operator's business and improve the general service to the public.

Included as a part of each lease and specifically pleaded and relied upon by plaintiff, apparently as the keystone of his cause of action, is Paragraph G, which reads as follows:

"Paragraph G. None of the provisions of this lease shall be construed as reserving to Lessor any right to exercise any control over the business or operations of Lessee conducted upon said premises or to direct in any manner the method whereby any such business or oper-

ations shall be conducted. Lessor shall have no control or direction over the employment or conduct of employees of Lessee, and in no event shall any person or persons employed by Lessee be considered an employee of Lessor."

Plaintiff charges, and as nearly as can be determined from the record bases his entire case upon, the allegation that defendant Skelly and the other defendants as officers of Skelly, with full knowledge of the terms of Paragraph G, were from February 1, 1946, to August 1, 1949, guilty of acts and conduct "which were wanton, unwarranted, unreasonable, vicious, willful, intentional malicious, unlawful and offensive" in many particulars, among them, (a) in insisting that plaintiff purchase more accessories than were necessary; (b) in making up reports of plaintiff's operations showing the amounts of stock on hand, the amounts of cash, accounts receivable, equipment and liabilities; (c) in demanding that he operate the stations under the terms and conditions of a "Skelly Approved Service" program including methods of service to customers, use of uniforms by attendants, maintaining clean driveways and restrooms, and the like; (d) in threatening to cancel the leases unless plaintiff secured additional help in the operation of the stations, carried additional merchandise and solicited additional business; (e) in insisting that the stations be opened longer hours; and (f) in demanding that certain employees be replaced and other employees be obtained.

By virtue of these facts plaintiff claims that his right of privacy has been invaded, that defendants breached the lease agreements, that there was actual interference and both actual and punitive damages was requested.

Defendants claim that the matters alleged constitute no violation of the leases; that there was no damage of any kind shown to have been suffered by plaintiff, that the various sales agreements, amendments to the station leases and other agreements altered and clarified the undertakings of the parties in respect to the matters complained of, to all of which plaintiff agreed and consented; that if there were any violations of the lease agreement plaintiff acquiesced in them and was estopped to complain; and that there was a full settlement and release of all matters complained of.

Plaintiff's case consisted entirely of his own testimony and the leases, sales agreements, SAS program contracts and other memoranda. Under that testimony, and as shown by the documents themselves, it is quite apparent that Paragraph G primarily was to make clear that the relationship created between plaintiff and defendant Skelly was not that of employer and employee, or principal and agent, but that the stations should be operated simply as efficient outlets for defendant Skelly's products in the area.

As we see it, Paragraph G had no other purpose and could not be construed to justify the interpretation plaintiff attempts to place on it. This construction is given added emphasis by construing the leases in conjunction with the sales agreements as we are required to do. See National Refining Co. v. Cox, 227 Mo.App. 778, 57 S.W.2d 778.

 It would unnecessarily encumber this memorandum to outline in detail the pleadings and evidence relating to the conclusion that there is no genuine issue as to any material fact to be tried in this case. Actually there is considerable doubt as to whether the amended petition itself states a claim for relief; but there certainly is no question but that under the evidence there is a complete failure to establish any actionable wrong on the part of any of the defendants or the violation of any legal duty owed plaintiff. In essence, plaintiff's evidence shows that defendants did what they had a legal right to do. Plaintiff agreed to do substantially what they requested him to do; and even if defendants may have overstepped their authority—and the evidence fails to

592

show they did—plaintiff either ignored it or acquiesced in and submitted to it without objection. In fact, on August 1, 1949, plaintiff and defendants Skelly executed mutual cancellation agreements, with no reservations being made by plaintiff for this claim, and released all claims growing or arising out of any and all the agreements. That release alone, under the evidence as submitted, forecloses plaintiff's right to recovery in this action.

Furthermore, although it is not particularly material in view of the conclusions expressed above, plaintiff's evidence fails to show actual damage or loss sustained by him, and shows the absence of any malice on the part of defendants; and on those bases alone he would not be entitled to recover. See Pasquel v. Owen, 8 Cir., 186 F.2d 263; Hilderbrand v. Anderson, Mo.App., 270 S.W.2d 406.

For all of the foregoing reasons, defendants' motion is sustained and summary judgment for defendants is entered. It is so ordered.