Paulette COLOGNA,
Plaintiff–Respondent,

v.

FARMERS AND MERCHANTS
INSURANCE COMPANY,
Defendant–Appellant.

Paulette COLOGNA, Plaintiff–Appellant,

v.

FARMERS AND MERCHANTS
INSURANCE COMPANY,
Defendant–Respondent.

Nos. 16153, 16154.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 2, 1990.

Motion for Rehearing or Transfer
Denied Feb. 22, 1990.

Application to Transfer Denied
April 17, 1990.

Stephen H. Snead, Mann, Walter, Burkart, Weathers & Walter, Springfield, for defendant-appellant-respondent Farmers.

C. Ronald Baird, John R. Lightner, Dorr, Baird and Lightner, Springfield, for plaintiff-respondent-appellant Cologna.

HOGAN, Judge.

In this statutory garnishment action brought pursuant to § 379.200, RSMo

1986,[1] plaintiff Paulette Cologna (hereinafter plaintiff or Paulette) has had summary judgment against defendant Farmers and Merchants Insurance Company (hereinafter Farmers). The trial court denied Paulette's motion for attorney's fees, expenses and other sanctions. Appeal No. 16153 is Farmers' appeal from the order granting summary judgment; Appeal No. 16154 is Paulette's appeal from the trial court's ruling denying an award of fees, costs and other sanctions pursuant to § 514.205, Rule 55.03 and Rule 84.19. The appeals were consolidated for hearing and disposition. We shall consider Farmers' appeal first. It has a convoluted history, some of which must be recited.

Eugene F. Cologna, Jr. (hereinafter Gene), was married to Rita K. Cologna (hereinafter Rita) in 1965. They were divorced in 1979. Gene thereafter married Paulette. Effective August 4, 1982, Farmers issued a Homeowner's policy to Rita, covering the period from that date to August 4, 1983. Section II of the policy provided that if suit were brought against Rita for damages because of bodily injury, Farmers would: (1) pay up to its limit of liability ($100,000) for the damages for which Rita was legally liable, and (2) provide Rita a defense at Farmers' expense by counsel of Farmers' choice. Section II of the policy specifically excluded bodily injury "which is expected or intended by the insured." On March 26, 1983, Gene went to Rita's residence. While he was there, a shotgun, held by Rita, discharged. Gene was killed.

Plaintiff Paulette thereafter commenced a wrongful death action against Rita in the Circuit Court of Webster County. We have not been favored with a copy of the petition filed in that case, but by letter dated June 29, 1983, Farmers advised Rita it had received a copy of the suit papers, and continued:

"Your policy ... states, 'If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:

(b) provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.'

*The suit which has been brought against you, we feel fails to state sufficient information for us to make a decision as to the coverage under your policy.*

We are entering an appearance and defense of the suit under the condition that the defense and investigation thereof, by the company, shall not be construed to change, waive, invalidate or forfeit any of the terms and conditions of the policy or any of the company's rights thereunder. No act of the company, done by way of investigation or defense shall be construed as an admission of liability under this policy...." (Emphasis added.)

Farmers also advised Rita that it had retained counsel to make a defense.

The wrongful death action was thereafter voluntarily dismissed without prejudice and refiled in Stone County. On March 6, 1985, Farmers directed a letter to Rita which again acknowledged receipt of the suit papers and continued:

"Your policy ... states, 'If a claim is made or a suit is brought against any

1. Which reads: "Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death, or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company, person, firm or association as described in section 379.195, and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

References to statutes and rules, except as otherwise specifically noted, are to RSMO 1986 and Missouri Rules of Court (19th ed. 1988).

insured for damages because of bodily injury or property damage to which this coverage applies, we will:

b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.' The policy goes on further under Section II–Exclusions, '1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage: a. which is expected or intended by the insured;'

The suit which has been brought against you, we feel states in terms which may be applicable to paragraph (a) of the Exclusions which states that Coverage E—Personal Liability ... [does] not apply to bodily injury or property damage: a. which is expected or intended by the insured.

We are entering an appearance on the defense of the suit under the condition that the defense and the investigation thereof, by the company, shall not be construed to change, waive, invalidate or forfeit any of the terms and conditions of the policy or any of the company's rights thereunder. No act of the company, done by way of investigation or defense shall be construed as an admission of liability on this policy."

Farmers again advised Rita that it had retained counsel to defend the wrongful death action.

On June 14, 1985, Paulette and Rita entered into a written agreement as follows:

## "AGREEMENT

THIS AGREEMENT, entered into this 14 day of June, 1985, by and between PAULETTE COLOGNA, hereinafter referred to as 'First Party,' and RITA COLOGNA, hereinafter referred to as 'Second Party',

WITNESSETH:

WHEREAS, Eugene F. Cologna, Jr. was involved in a shooting on March 26, 1983 by [Rita] and died as a direct result of the gunshot wound; and

WHEREAS, [Paulette] was Eugene F. Cologna, Jr.'s spouse on March 26, 1983; and

WHEREAS, [Paulette] has filed suit against [Rita] for the wrongful death of her husband in order to recover damages she sustained as a result of Eugene F. Cologna, Jr.'s death; and

WHEREAS, [Paulette] asserts that [Rita] is liable to [Paulette] for her damages as a result of the negligent operation of the gun by [Rita] while it was in her possession; and

WHEREAS, Silvey Companies, by and through Farmers and Merchants Insurance Company, issued a homeowner's insurance policy, Policy No. 7 68 89 87, effective 8/4/82 through 8/4/83, with the named insured being [Rita]; and

WHEREAS, said homeowner's insurance policy may provide coverage for liability which [Rita] might incur because of Eugene F. Cologna, Jr.'s death; and

WHEREAS, [Rita] does not have any other insurance providing coverage for liability which she might incur because of Eugene F. Cologna, Jr.'s death; and

WHEREAS, it is the desire of [Rita] not to expend any money in attorney's fees or otherwise in the defense of the lawsuit brought by [Paulette], nor to permit the insurance company heretofore described to defend said lawsuit on behalf of [Rita], unless and until said company admits that the policy of insurance provides coverage if [Rita] is found liable for the death of Eugene F. Cologna, Jr.; and

WHEREAS, it is the desire of the parties that any judgment [Paulette] obtains against [Rita] be satisfied solely from the proceeds of the aforesaid insurance policy, or any other insurance policy affording coverage to [Rita]; and

WHEREAS, the parties are aware of the rights provided them by Section 537.-

065, R.S.Mo., 1978.[2]

NOW, THEREFORE, in consideration of the mutual promises contained herein and in consideration of the specified sum of One Hundred Dollars paid by [Rita] to [Paulette], the receipt and sufficiency of which is hereby acknowledged, it is agreed, pursuant to Section 537.065 R.S. Mo., 1978, as follows:

1. [Paulette] agrees, in the event she obtains a judgment against [Rita], that neither [Paulette] nor any person, firm or corporation claiming by or through her, shall levy execution or garnishment or otherwise provided by law, except as against any insurer which insures the legal liability of [Rita].

2. [Rita] Agrees:

(a) To speak truthfully when giving testimony concerning the facts and circumstances surrounding the death of Eugene F. Cologna, Jr., and any investigation conducted thereafter;

(b) To refuse to permit any insurance company to defend the lawsuit filed by [Paulette] unless the company first admits that the applicable insurance policy provides coverage for any liability on the part of [Rita] for the death of Eugene F. Cologna, Jr.; and

(c) To allow [Paulette] to take a default judgment against her if no insurance company defends the lawsuit in conformity with the terms outlined in Section (b) above.

3. The parties to this Agreement hereby agree that this Agreement may be recorded in the office of the Recorder of Deeds for any county in which [Rita] resides or may reside in the future.

IN WITNESS WHEREOF, the parties have hereunto executed this Agreement the day and year first above written." This agreement was signed and acknowledged by both parties.

On July 1, 1985, Rita advised counsel for Farmers that she had entered into the contract we have set out and a copy of the contract was attached. Rita further advised Farmers' counsel that:

" ... I hereby request that you, on behalf of ... Farmers and Merchants Insurance Company, admit there is coverage for the occurrence which is the subject of the lawsuit, and that you continue your appearance on my behalf to defend my interests in this lawsuit.

You are further notified that if you do not admit the existence of coverage, then you will not be permitted to participate in the defense of this lawsuit in my behalf. A reservation of rights agreement or letter is not acceptable and will not be accepted. Any previous such agreement or letter which you claim entitles you to represent my interests in defending this lawsuit without first admitting coverage are hereby revoked and declared null and void.

If you do not admit coverage by August 1, 1985, then I demand that you withdraw from the case...."

On July 17, 1985, Farmers responded by filing an action for a declaratory judgment in the Circuit Court of Stone County.

---

2. Section 537.065, RSMO 1978, read as follows: *"Claimant and tort-feasor may contract to limit recovery to specified assets or insurance contract —effect.—*Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract. Such contract, when properly acknowledged by the parties thereto, may be recorded in the office of the recorder of deeds in any county where a judgment may be rendered, or in the county of the residence of the tort-feasor, or in both such counties, and if the same is so recorded then such tort-feasor's property, except as to the assets specifically listed in the contract, shall not be subject to any judgment lien as the result of any judgment rendered against the tort-feasor, arising out of the transaction for which the contract is entered into."

Farmers, as plaintiff, joined both Paulette and Rita as defendants. The original petition was thereafter amended, and in its amended petition Farmers pleaded among other things: 1) its existence as a Missouri insurance carrier; 2) the issuance of the homeowner's policy; 3) that while the policy was in effect Rita assaulted and killed Gene Cologna by shooting him; 4) Paulette's commencement of a wrongful death action against Rita and the pendency of that action; 5) Farmers' offer to defend the action subject to a reservation of rights; 6) that Rita had "failed to cooperate" with Farmers in the defense of the civil action as required by the policy, had "colluded" with Paulette and had ordered Farmers' attorney to withdraw from the defense of the wrongful death action unless the reservation of rights was withdrawn; 7) that Farmers believed the death of Gene Cologna was either expected or intended by Rita and any liability to Paulette was therefore specifically excluded from the coverage of the policy; 8) that Rita had "colluded and conspired" with Paulette to expose Farmers to a substantial loss; 9) that Rita had "colluded and conspired" with Paulette in the following respects: a) by writing a letter to Farmers' counsel demanding that he either withdraw or defend the wrongful death action without a reservation of rights; b) by entering into a stipulation, in a Greene County case, to the effect that Rita carelessly and negligently caused the death of Gene Cologna and that his death was not Rita's intentional act,[3] and c) that the defendants Paulette and Rita had engaged in other collusive activities, the nature and extent of which were unknown to Farmers and therefore could not be pleaded. Prayer of the petition for declaratory judgment was that the court construe the provisions of Farmers' policy and determine the respective rights and liabilities of the parties. Farmers further prayed that the court stay the trial of the wrongful

death case pending trial of the declaratory judgment action. The trial court granted the stay of proceeding in the wrongful death case; the declaratory judgment action was tried to a jury.

The judgment in the declaratory judgment action recites the appearance of the parties; the selection and swearing of a jury and the presentation of evidence by Farmers. Motions for a directed verdict were filed by Farmers and by Paulette at the close of plaintiff's case and were denied. Defendant Paulette presented evidence; defendant Rita did not. Plaintiff and defendant Paulette moved for a directed verdict at the close of all the evidence and these motions were denied. Paulette moved orally for a directed verdict on the issues of failure to cooperate, collusion and intent to do bodily injury. This motion was denied. The issues of Rita's failure to cooperate, collusion and intent to do bodily harm were abandoned by the plaintiff and were specifically withdrawn from the jury's consideration by Instruction No. 4(a). Instruction No. 6, Farmers' verdict-directing instruction, directed a verdict for Farmers' if the jury found that Rita "expected" to cause bodily injury to Gene Cologna.[4] The jury returned two verdicts, one finding against Farmers and in favor of Rita, the other finding against Farmers and in favor of Paulette. The adjudicatory part of the court's judgment read as follows:

"NOW, THEREFORE, IT IS ORDERED ADJUDGED AND DECREED AS FOLLOWS: The policy of insurance issued by Plaintiff Farmers and Merchants Insurance Company, being a certain homeowners policy and contract of insurance, number 768 89 87, issued to the insured Rita K. Cologna does provide coverage for the actions of Rita K. Cologna in causing the death of Eugene F. Cologna, Jr., on March 26, 1983, and that the exclusion provision of said policy providing an exception to a defense and

---

3. This stipulation was filed in an action brought by Paulette as personal representative of Gene's estate against Rita and a life insurance company. The stipulation was attached to and incorporated in the petition for declaratory judgment.

4. By Instruction No. 5, the jury was told that "The phrase 'expected' as used in these instructions means to anticipate or look forward to the coming or occurrence of an act, or to consider the act probably or certain to occur."

coverage in the event of intended or expected bodily injury is not applicable in this case, ... and that the policy was in full force and effect on March 26, 1983 and that the Plaintiff Farmers and Merchants Insurance Company is required to provide Rita K. Cologna with a defense to the matters alleged in the case of Paulette Cologna, Plaintiff v. Rita K. Cologna, Defendant, Case Number CV585–22CC, filed in the Circuit Court of Stone County, Missouri, and to pay any judgment rendered in that case up to the limits of the aforesaid policy. Costs are assessed against Plaintiff...." (Emphasis added.)

This judgment was entered on July 9, 1986. On August 6 or 7 (the record is not entirely clear) the trial court granted Paulette's motion to lift the stay of proceeding in the wrongful death action. On the same day or shortly thereafter, Farmers gave notice of appeal from the judgment rendered in the declaratory judgment action. The notice of appeal was filed in the trial court on August 8, 1986.

Correspondence between Rita and Farmers' counsel was resumed. On October 2, 1986, Rita directed a letter to Farmers' counsel, reminding him that she had insisted upon his withdrawal from the case unless Farmers was willing to rescind its reservation of rights. Counsel's attention was also called to the fact that it had chosen not to accept the trial court's decree in the declaratory judgment action but had instead appealed the judgment. Rita renewed her demand that Farmers' counsel withdraw from the defense of the wrongful death action. Finally, upon Rita's motion, Farmers' counsel was ordered to withdraw from participation in the wrongful death case.

On March 20, 1987, the wrongful death action was tried without the intervention of a jury in the Circuit Court of Stone County. Plaintiff Paulette presented evidence, although Rita did not. The trial court made rather careful calculations of the damage sustained by plaintiff by reason of her husband's death. At the conclusion of the trial the court gave judgment for the plaintiff in the amount of $450,000. The judgment is dated April 15, 1987.

On August 18, 1987, this court affirmed the judgment of the trial court in the declaratory judgment action. *Farmers and Merchants Ins. Co. v. Cologna,* 736 S.W.2d 559 (Mo.App.1987). On October 14, 1987, our mandate issued. On October 15, 1987, this action was commenced. Aside from formal averments, Paulette alleged that Gene was in Rita's home when a shotgun discharged, causing Gene's death, that Paulette had filed a wrongful death action, had tried that case and had recovered a judgment in the amount of $450,000. It was further averred that the action was being brought under the provisions of § 379.200 and pursuant to the terms of that statute. The issuance of the insurance policy was alleged and a copy thereof was attached and incorporated. Further, it was pleaded that by reason of the terms and provisions of the policy, Farmers was obligated to defend the wrongful death action and was obligated to pay a part of the judgment rendered, specifically the sum of $100,000 together with interest. Prayer of the petition was for judgment in the amount of $100,000 plus post-judgment interest at 9 percent on the judgment rendered in the wrongful death action from March 21, 1987, through October 9, 1987, in the amount of $22,635.84,[5] plus post-judgment interest from October 9, 1987, at the rate of $110.96 per day, plus costs incurred in the wrongful death action and the costs incurred in the garnishment action.

The defendant answered, in general denying the allegations of the petition, but specifically averring as defenses that: 1) Rita had "fired" the attorney hired by Farmers to defend the wrongful death action, forcing him to withdraw from the action and refusing to permit any Farmers' representative to participate in the defense of that case unless Farmers waived its

**5.** In this case, plaintiff contended that Farmers was liable for interest on the entire amount recovered in the wrongful death suit.

right to appeal in the declaratory judgment action; 2) Rita failed to give notice to Farmers that the wrongful death action had been set for trial, and 3) Rita had breached the terms of the policy and had failed to cooperate by waiving a jury trial in the wrongful death action and by failing to contest liability and the amount of damages in that case.

On May 2, 1988, plaintiff Paulette moved for summary judgment. The trial court granted the summary judgment and Farmers' appeal is taken from that order. Over 30 exhibits (including a number of trial memoranda) were filed with the motion, many of which have been set out in our tedious statement of the background facts. The trial court prepared and filed a memorandum explaining his reasons for granting the summary judgment. The court's findings have been helpful, although it is unnecessary to set them out at length.

Farmers has briefed and argued two points on appeal. As stated, these points are that: 1) At the very least, a question of fact existed (and exists) as to whether Farmers and Merchants Insurance Company's insured, Rita Cologna, failed to cooperate with Farmers in the defense of the wrongful death suit filed against her by: a) refusing to permit any of Farmers' representatives to conduct or participate in the defense of the wrongful death suit unless Farmers abandoned and waived its right to appeal the jury's verdict in the declaratory judgment action, b) failing to give notice that the wrongful death case had been set for trial, and c) waiving a jury trial and failing to contest liability in the wrongful death action. Point Two is a literal restatement of the first, followed by the conclusional allegation that Rita's failure to cooperate has been established as a matter of law.

■ The rules which govern review of orders granting a summary judgment are familiar. Present Rule 74.04(c) provides that a summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to a judgment as a matter of law." Summary judgments have not been favorites of the courts; many times our courts have held that summary judgment is a drastic remedy and is therefore inappropriate unless the prevailing party has shown by unassailable proof to be entitled thereto as a matter of law. See, e.g., *First Nat. Bank v. Chemical Products, Inc.*, 637 S.W.2d 373, 375 (Mo.App.1982). In this particular instance, however, it is to be borne in mind that our review of an order granting summary judgment is similar to our review of a court-tried case in that the judgment must be affirmed if it is sustainable on any theory. *Swink v. Swink*, 367 S.W.2d 575, 578 (Mo.1963); *McCready v. Southard*, 671 S.W.2d 385, 387 (Mo.App. 1984); *Snowden v. Northwest Mo. State University*, 624 S.W.2d 161, 165[1] (Mo. App.1981). In this case, the trial court was literally buried, as are we, in exhibits and memoranda but the parties offered no suggestion concerning the matters which might be noticed or considered, nor any guide as to the weight to be given to the more than 30 exhibits which were attached to and incorporated in the motion for summary judgment. It has been recognized that Rule 74.04 is an analog of Fed.R.Civ.P. 56. Decisions construing Fed.R.Civ.P. 56 are persuasive, though not controlling, in applying the Missouri rule. See *Cooper v. Finke*, 376 S.W.2d 225, 228[1] (Mo.1964). In addition to the matters enumerated in Fed.R.Civ.P. 56(c), which is the functional equivalent of Rule 74.04(c), the federal courts have held that in determining motions for summary judgment, the trial court may consider extrinsic facts, including evidence heard on a former trial. It has been held that in a proper case the court may consider the evidence in a companion case even though the plaintiff is not strictly bound under the principles of res judicata or collateral estoppel. *Gillum v. Skelly Oil Company*, 149 F.Supp. 588, 590[1, 2] (W.D.Mo.1957); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure 2d § 2723, p. 67 (1983). And, while motions for summary judgment generally must be supported by affidavits, such authentication is not necessary when

courts take notice of their own prior proceedings. *United States v. Webber,* 396 F.2d 381, 386, n. 10 (3d Cir.1968); *Daley v. Sears, Roebuck & Co.,* 90 F.Supp. 562, 563[1, 2] (N.D.Ohio 1950); Wright, Miller & Kane, op. cit. at p. 71. Further, as a practical matter, it must be remembered that the wrongful death action, the declaratory judgment action and the statutory garnishment action were all brought in the same court. If the general rule is that a court will not go outside the record before it to take notice of the proceedings in another case, this particular matter had been in litigation 5 years or thereabout when the motion for summary judgment was filed, and the dictates of common sense and the demands of justice provide an exception to the general rule. When necessary in order to reach a just result and bring an end to litigation, courts may look to the pleadings and facts in former cases between the same parties relating to the same subject matter. *A.G. Reeves Steel Const. Co. v. Weiss,* 119 F.2d 472, 474 (6th Cir.1941); *Knorp v. Thompson,* 352 Mo. 44, 52, 175 S.W.2d 889, 894 (1943); *Grassmuck v. Autorama Auto Equipment,* 659 S.W.2d 264, 266 (Mo.App.1983). We conclude the trial court was entitled to notice and consider the whole of the record laid before it and to notice the record in the two closely related cases which preceded the garnishment action now being reviewed. Further, we conclude that entry of the summary judgment was proper.

The controlling principle in this case is that when an insurer disclaims liability under a policy of insurance either on the ground that the policy is void or that the policy does not furnish or afford coverage it may not of right exact of the insured a reservation of rights and thus become entitled to defend an action without waiver of or estoppel to assert non-liability under the policy. This rule has been announced or recognized in any number of cases, including *Butters v. City of Independence,* 513 S.W.2d 418, 424–25 (Mo.1974); *Rieger v. London Guarantee & Accident Co.,* 202 Mo.App. 184, 211, 215 S.W. 920, 930[10–12] (1919); *Salonen v. Paanenen,* 320 Mass. 568, 71 N.E.2d 227, 232[6] (1947); *Hawkeye Cas. Co. v. Stoker,* 154 Neb. 466, 48 N.W.2d 623, 631–32 (1951); *Great American Indemnity Co. v. City of Corpus Christi,* 192 S.W.2d 917, 919 (Tex.Civ.App. 1946). It is important to bear in mind that Farmers never admitted liability on its policy. At the same time it was never willing to let the insured manage her defense as she saw fit.

Farmers' arguments, in this court, are essentially arguments that the well-established precedents should be reconsidered. The first subpoint advanced is that Rita failed to cooperate with Farmers by "firing" the attorney Farmers had employed to defend her and by refusing to permit any of the insurer's representatives to conduct or participate in the defense of the wrongful death action unless Farmers abandoned its appeal in the declaratory judgment action.

The merits of this point are governed by the principle we have just stated. When the wrongful death action was first commenced in Webster County, Farmers disclaimed liability on the equivocal ground that "The suit which has been brought against you, we feel fails to state sufficient information for us to make a decision as to the coverage under your policy." After this action was voluntarily dismissed and refiled in Stone County and on March 6, 1985, Farmers advised Rita in unequivocal terms that it believed Gene's death to have been "expected or intended" and therefore excluded from coverage. Farmers also advised Rita it had retained an attorney to defend the action, subject to its reservation of rights. As noted, Rita was not obliged to accept the defense on those terms.

Rita then entered into an agreement with Paulette pursuant to § 537.065 and advised Farmers she had done so. She further requested that Farmers admit liability or withdraw from the defense of the wrongful death action. Farmers' response to this request was to file a declaratory judgment action, averring among other things that the claim arising from Gene's death was not covered; that Rita had "colluded and conspired" with Paulette to expose Farmers to a substantial loss and had breached

her contractual obligation by refusing a defense under a reservation of rights. Farmers moved the trial court to stay prosecution of the wrongful death action pending adjudication of the declaratory judgment action and the stay was granted in accordance with the principles stated in *State ex rel. United States Fire Ins. Co. v. Terte,* 351 Mo. 1089, 1098, 176 S.W.2d 25, 30 (1943), and *State ex rel. Mid–Century Ins. Co. v. McKelvey,* 666 S.W.2d 457, 459 (Mo.App.1984). In the declaratory judgment action, the jury found that Gene's death was an occurrence within the coverage of the policy.

Thereafter, at Paulette's instance, the stay of proceeding in the wrongful death action was lifted. Rita again requested Farmers' counsel to withdraw from the case. Farmers' counsel showed no intention of doing so, and was excluded from participation—for whatever purpose—only after the trial court held a hearing and ordered him to withdraw.

Farmers now insists that Rita failed to cooperate by insisting on proceeding to trial in the wrongful death action at this point. We think not. Farmers' institution of the declaratory judgment action wherein it specifically repudiated liability was the equivalent of an unconditional denial of liability, *Hawkeye Cas. Co. v. Stoker,* 154 Neb. 466, 48 N.W.2d at 632, and its appeal from the adverse judgment therein rendered had the same effect. We are not persuaded that, for any of the reasons obliquely suggested by Farmers, that it was unfair to lift the stay in the declaratory judgment action as soon as the after-trial motions were denied. When a stay is granted to permit other litigation to proceed, the relief granted should be limited to the shortest time possible to accomplish its purpose. *United States v. Cargill, Inc.,* 508 F.Supp. 734, 739 (D. Delaware 1981). In this connection, it may be noted that Farmers requested the stay so it could obtain a declaration of its rights. Nevertheless, it abandoned its claim that Rita had failed to cooperate in the defense of the wrongful death action and its claim that she had "colluded and conspired" with Paulette in certain respects. *Farmers and*

*Merchants Ins. Co. v. Cologna,* 736 S.W.2d at 567. Inasmuch as Farmers chose not to obtain a declaration of rights which would have disposed of all the questions concerning its duty to its insured—a declaration to which it was entitled—it is in no position to complain.

■ Farmers' second subpoint—that Rita failed to give it notice of the settling of the wrongful death action—is controlled by the same rule as the first subpoint. When the wrongful death action was filed in Stone County, Farmers refused to defend the action except on reservation of rights, and the insured would not accept such a conditional defense. Farmers later commenced a declaratory judgment action against its insured, wherein as we have observed, it repudiated liability. When the wrongful death action was set for trial and when that action was tried on March 20, 1987, Farmers was still contending—in this court—that Gene Cologna's death was an occurrence not covered by the policy. As we have already said, it could not reserve its right to disclaim liability and at the same time insist on controlling the defense of the wrongful death action. Neither was Farmers entitled to participate, as it suggests, in the defense of the wrongful death action for some limited purpose. When an insurer has disclaimed coverage and later decides to provide a defense, its readiness and willingness to defend the action must be clearly and unequivocally stated. *Playboy v. Rent–A–Car, Inc. v. Continental Insurance Co.,* 306 F.Supp. 762, 765[4] (D.C. Virgin Islands 1969); 7C Appleman, Insurance Law and Practice § 4681, p. 13 (Berdal ed. 1979). That is not the case here, and the subpoint is without merit.

■ Farmers' final subpoint is that Rita failed to cooperate by waiving a jury trial, failing to contest liability, failing to contest damages and by failing to offer evidence at the trial of the wrongful death action.

This contention, as we are given to understand it, is an argument that execution and performance of the agreement between Paulette and the insured violated Rita's duty to "cooperate." Farmers has avoided

directing us to the particular duty of cooperation which Rita did not perform. Section II, paragraph 3, of the policy sets out the insured's "Duties after Loss." The insured's duties after loss include a duty to assist in: (1) making settlement; (2) the enforcement of any right of contribution or indemnity against any person or organization who may be liable to any insured; (3) the conduct of suits and attend [sic] hearings and trials; (4) securing and giving evidence and obtaining the attendance of witnesses. Paragraph 3(e) of Part II of the policy provides that "the insured shall not, except at the insured's own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the bodily injury."

There is authority for the proposition that an insurer's unjustified refusal to defend upon the ground that the claim is not covered by the policy relieves the insured from his contract obligation not to settle and the insured is at liberty to make a reasonable settlement or compromise without losing his right to recover on the policy. It is also said that to bind the insurer the settlement must be reasonable and entered into in good faith. Annot, 49 A.L.R.2d 744 § 22[a] (1956); 44 Am.Jur.2d Insurance § 1420, p. 367 (1982). In this case the execution and performance of the contract pursuant to § 537.065 was in effect a statutorily authorized settlement of Paulette's claim which Rita executed after Farmers had trenchantly denied coverage. As Paulette maintains similar agreements have been approved by our courts in varying circumstances. See *United States Fidelity & G. Co. v. Safeco Ins. Co. of America*, 522 S.W.2d 809, 819–21 (Mo. banc 1975); *Butters v. City of Independence*, 513 S.W.2d at 426[11, 12]; *Eakins v. Burton*, 423 S.W.2d 787, 790[1] (Mo.1968). It could not fairly be said that the judgment in the wrongful death action was collusive or fraudulent; the trial court made extensive findings of fact in connection with Paulette's claim for damages because of

Gene's death and concluded that the plaintiff had sustained total damages in the amount of $450,000. Farmers' characterization of the proceeding as a species of confession of judgment is unwarranted.

■ In any event, we believe the claim that the agreement under § 537.065 was collusive and fraudulent is barred by the doctrine of res judicata, nowadays referred to as claim preclusion. The judgment in the declaratory judgment action was not a final judgment so as to be preclusive when the wrongful death action was tried. See F. James and G. Hazard, Civil Procedure § 11.4, p. 534 (1977). However, by the time this garnishment proceeding was commenced, the judgment in the declaratory judgment proceeding had become final; our mandate had issued. Therefore, in this equitable garnishment action, the doctrine of res judicata applies, and that doctrine operates to bar not only those matters which were actually litigated but those matters which might have been litigated as well. In our view, the causes of action, or the "dimension of the claim" litigated in the wrongful death action and the declaratory judgment action were the same.[6] Such being the case, the judgment in the declaratory judgment action was final as to those issues, including the issues of fraud and collusion, which might have been tried but were not. *In re Franz's Estate*, 242 S.W.2d 490, 497 (Mo.1951); *Hunter v. Delta Realty Co.*, 350 Mo. 1123, 1130, 169 S.W.2d 936, 940[11] (1943); *Moore v. Beck*, 664 S.W.2d 15, 18 (Mo.App.1984). Farmers' argument, in its reply brief, that the doctrine of res judicata does not apply because Rita had not yet performed her agreement is unavailing. Counsel has confused the doctrines of collateral estoppel and res judicata, but that is of no consequence. In the declaratory judgment action, the parties could have litigated the question whether the agreement made pursuant to § 537.065 was collusive or fraudulent. The effect of the declaratory judgment was to establish that it was not. The

---

6. See, generally, Restatement (Second) of Judgments § 24 comment b and § 25(1) (1982) and

F. James and G. Hazard, op.cit., supra, § 11.8.

performance of the agreement was only the performance of an agreement which Farmers is barred from questioning. The argument that Rita breached one or more of her covenants to cooperate with her insurer by "waiving trial by jury … by failing to contest liability, failing to contest damages and by failing to offer any evidence" is, for the reasons stated, without merit.

Farmers' second point, which is that it was entitled to judgment as a matter of law, does not appear to have been advanced in the trial court—as by motion for summary judgment—and we doubt the point is properly before this court for review. Rule 84.13(a). In any event, the second point is but a variant of the first and what we have said is sufficient to dispose of it as being without merit.

No point is raised concerning the method by which damages were computed. We no longer review any aspect of a case concerning which no error has been assigned and properly briefed. Rule 84.13(a). We therefore forego any consideration of the trial court's assessment of damages.

■ Appeal No. 16154 is taken from the trial court's refusal to allow Paulette attorney's fees, expenses and costs pursuant to § 514.205 and Rule 55.03 because Farmers' defenses to the statutory garnishment were frivolous and made in bad faith. Paulette also contended that she was entitled to damages for a frivolous appeal pursuant to Rule 84.19.

Paraphrased, § 514.205 provides for sanctions against any party in a civil action who, frivolously and in bad faith initiates an action, asserts a defense or files a motion. Damages for such violations can include the costs attributable to and expenses incurred in defending the bad-faith action. See, generally, *Dillard Dept. Stores, Inc. v. Muegler*, 775 S.W.2d 179, 185–86 (Mo.App.1989). The rule is designed to provide a method of dealing with the conduct of lawyers who file irresponsible or groundless pleadings to harass their opponents, cause unnecessary delay or needless increase in the cost of litigation. See *State ex rel. McMullin v. Satz*, 759

S.W.2d 839, 840–42 (Mo. banc 1988) (Blackmar, J., dissenting.)

We have doubt that the argument for sanctions under Rule 55.03 is properly before this court. Clearly, the argument made in this court differs materially from the point raised by the plaintiff in the trial court and, of course, plaintiff may not alter or broaden the scope of her objection on appeal. *Cowden v. Sun Oil Co. of Pennsylvania*, 583 S.W.2d 547, 549[5] (Mo.App. 1979). Moreover, the plaintiff has failed to develop her point by directing the attention of the court to those pleadings or motions which violate Rule 55.03. It is not our duty and we cannot search the record in an effort to find some fact or facts which support a general assertion that the trial court erred. *Schlanger v. Simon*, 339 S.W.2d 825, 828 (Mo.1960). We have examined the record in light of precedents construing Fed.R.Civ.P. 11, which is analogous to Rule 55.03, e.g., *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830–31 (9th Cir. 1986), but we are not convinced that the trial court erred in refusing sanctions as permitted by Rule 55.03.

■ We also find the motion for damages for frivolous appeal to be ill taken in this case. It does not appear that no fairly debatable questions were presented by Farmers, or that its appeal was frivolous. It would therefore be inappropriate to award damages pursuant to Rule 84.19. See *Lansing v. Lansing*, 736 S.W.2d 554, 559[10–12] (Mo.App.1987). The judgment is affirmed in Appeal No. 16154.

FLANIGAN, P.J., and MAUS, J., concur.